FILED

Charles Edward Lincoln, III
6102 Valleyview Drive
Lago Vista, Texas 78645
Telephone: (512) 968-2500
E-mail: charles.e.lincoln@att.net
Plaintiff *in propia persona*

2009 APR 17  PM 4: 00

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY LAW

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA-SANTA ANA

| | | |
|---|---|---|
| CHARLES EDWARD LINCOLN, III,<br>        Plaintiff, | § <br> § <br> § | HON. DAVID O. CARTER |
| v. | § <br> § | Case No. SACV08-1334 DOC (Ex) |
| CAL-WESTERN RECONVEYANCE<br>CORPORATION, WELLS FARGO BANK,<br>As successor by merger to WELLS FARGO<br>HOME MORTGAGE, INC., FIRST<br>AMERICAN TITLE CORPORATION,<br>FIRST AMERICAN CORPORATION,<br>FLORIDA DEFAULT LAW GROUP, P.L,<br>And all JOHN & JANE DOES 1-50,<br>        Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | FIRST AMENDED COMPLAINT<br>TRIAL-BY-JURY DEMANDED |
| §§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§ | | |

## FIRST AMENDED COMPLAINT

### TO THE HONORABLE DAVID O. CARTER, U.S. DISTRICT JUDGE:

1.      Comes now the Plaintiff, with this his First Amended Complaint, complaining of damages inflicted by, and seeking quiet title to real estate located in California, Florida, and Idaho, from Wells Fargo Bank, N.A., and other defendants.

2.      This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 in that Plaintiff resides in Texas and Massachusetts. Defendant Wells Fargo Bank is chartered in South Dakota with its world headquarters in San Francisco California. Defendant Cal-Western Reconveyance Corporation of Washington has offices in El Cajon, California. Defendant First American Title Corporation is a subsidiary of First American Corporation incorporated in and with headquarters here in Santa Ana, California. The Florida Default Law Group, P.L., is a limited partnership based in Tampa, Florida. There is complete diversity of citizenship between the parties to this cause

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*
                                          - 1 -
                                          *CHARLES EDWARD LINCOLN, III*
                                          *6102 VALLEYVIEW DRIVE*
                                          *LAGO VISTA, TEXAS 78645*
                                          *512-968-2500*
                                          *CHARLES.E.LINCOLN@ATT.NET*

1

2

3       **3.**      In addition, this Court has jurisdiction pursuant to 28 U.S.C. §1331 (Federal Question) and

4   28 U.S.C. §1343 (Civil Rights) insofar as Plaintiff seeks a declaratory judgment or series of three

5   declaratory judgments pursuant to 42 U.S.C. §§1981, 1982, 1983, and 1988(a), that California

6   Civil Code sections 2924–2924i (providing "exhaustive" procedures for non-judicial foreclosure),

7   as well as Idaho General Laws, Mortgages & Deeds §45-1506 [Chapter 15, §§45-1501-1515], and

8   Florida Statutes §§673.3021 & 673.3091 [§§673.3011-673.3121 generally] have each separately, in

9   their respective states, recently (over the past 15-30 years) been applied and allowed to be

10  exercised in such a way that the common law rights to limit collection and enforcement to "holders

11  in due course" and other privileges inherent in the common law doctrine of "privity of contract"

12  have been all but obliterated.

13      **4.**      Courts in California and Idaho seem particularly anxious to gloss over the "holder in due

14  course" and "privity of contract" doctrines in non-judicial foreclosures, accepting (as U.S. District

15  Judge Lawrence J. O'Neil did as recently as December 1, 2008) defendant servicer contentions

16  (without any supporting law, precedent, or other authority whatsoever) such as "Defendants fault

17  the complaint's allegation that an unnamed note-holder does not possess the note in that

18  there is no "obligation to produce originals of either the promissory note or deed of trust."

19  *Vargas v. Recontrust Co.,* 2008 U.S. Dist. LEXIS 100115 (E.D.CA. 2008).

20      **5.**      In fact, the obligation to produce the original note and contract has always been a key

21  requirement of the common law of contracts, and in the State of Florida (where most foreclosures

22  are judicial rather than non-judicial in nature) this requirement is enshrined by statute in

23  §673.3021, although the excuses by which lost notes are re-established under §673.3091 are often

24  no more than ridiculous "the dog ate my homework"-type explanations such as presented by the

25  Florida Default Group in Exhibit C to this First Amended Complaint.

26      **6.**      The effective abandonment of the common law by the executive and judicial branches did

27  not come about as the result of overt democratically enacted legislative modification of the law, nor

28

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

-2-

pursuant to any official governmental policy of or for the public benefit, but to enable and enrich a favored group which has profited from a non-governmental financial innovation of the late 1970s-80s known as "securitization of debt", with securitized and bundled "debt" sold on the open market in complete disregard and, in fact, in flagrant violation of all common law (and Uniform Commercial Code) principles of "holder in due course" or "privity of contract".

7.       "Holder in due course" and "privity of contract" were key elements of common law jurisprudence specifically protected from interference by the state governments under Article I, §10, Cl. 1 of the United States Constitution, except where necessary to protect or advance a compelling governmental interest in the state's interest of self-protection or emergency exercise of the police power.  Cf., e.g., ***Allied Structural Steel Co. V. Spannaus, Attorney General Of Minnesota, et al.,*** 438 U.S. 234; 98 S. Ct. 2716; 57 L. Ed. 2d 727 (1978).

8.       Plaintiff reserves the right to amend and add additional causes of action to this complaint by regular amendment pursuant to Rule 15 of the Federal Rules of Civil Procedure as may be necessary to bring all issues before the Court concerning the properties for which quiet title is sought in California, Florida, and Idaho.

9.       Venue is proper in the Central District of California in that the primary (most valuable) property made the subject of this lawsuit is located at 4 Via Corbina in Rancho Santa Margarita (Orange County 92688) as well as other real estate owned and subject to this dispute is located in the Central District of California.   Furthermore, at least two Defendants, First American Corporation and First American Title, have their principle places of business here in Santa Ana, Orange County, California, where this action was filed and remains pending.

## BACKGROUND & THEORY OF THE CASE

10.       In or about May-June, 2008, Plaintiff Charles Edward Lincoln, III, contracted to take title to and accept several properties from one Hal Kuder (who was leaving the country), and he accepted title subject to an obligation to pay the mortgages to which these properties were subject if he could

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*
- 3 -

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

1

2

3  verify that the servicing entities were actually "holders in due course" of Hal Kuder's notes, or that

4  they were somehow or otherwise parties in privity with him  (see Exhibit A).

5  **11.**    Plaintiff was aware of the disputes going on nationwide about "holder in due course" and

6  "privity of contract" status and so he sent letters with attachments (Exhibit B) to Wells Fargo in

7  August of 2008 demanding proof of both "holder in due course" and "privity of contract" status, as

8  well as to inform Wells Fargo of the change of ownership.

9  **12.**    Wells Fargo never responded to Lincoln's letter except to file suit for foreclosure in Florida

10  on September 1, 2009 (see Exhibit C).

11  **13.**    In its Florida Mortgage Foreclosure Complaint, at Count II, Page 3-4 (Pages 11-12 of 38)

12  Wells Fargo admitted to having "lost" the mortgage note, but The Florida Default Law Group,

13  without proof or, in fact, any evidence claimed that "Plaintiff was in possession of the Mortgage

14  Note and entitled to enforce it when loss of possession occurred or Plaintiff has been assigned the

15  right to enforce the mortgage Note." Page 3, ¶19.

16  **14.**    The Florida Default Law Group continued with its fairy tale, "At some time between

17  February 11, 2005, and the present, the Mortgage Note has been either lost or destroyed and the

18  Plaintiff is unable to state the manner in which this occurred.  After due diligent search, Plaintiff

19  has been unable to obtain possession of the Mortgage Note.  The Mortgage Note has not been

20  seized or transferred by Plaintiff."  Exhibit C: Mortgage Foreclosure Complaint Page 4.

21  WHEREFORE, Plaintiff requests that the Court re-establish the Mortgage Note, which this

22  Mortgage secures ¶¶21-22.

23  **15.**    It would be one thing if this were in isolated incident, but it is an epidemic of fraud, made

24  all the more acute by the baldness of the lie.

25  **16.**    This slippery tale of the mysteriously lost or destroyed note, repeated thousands of times all

26  over Florida, is entitled to no more credibility than those offered by truant schoolboys involving

27  dogs who eat homework or great aunts who always die during finals or when term papers are due,

28

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

-4-

but it is used successfully in perhaps 80-90% of all Florida Mortgage Foreclosures, and probably 100% of all non-judicial foreclosures in California and Idaho.

**17.**     And all the little Oysters stood and waited in a row.  "The time has come," the Walrus said "to talk of many things: of shoes and ships and sealing wax, of cabbages and kings."

**18.**     Like every one of the Oysters in Lewis Carroll's "The Walrus and the Carpenter" from *Through the looking glass and what Alice found there* (1872), the mortgagors in the United States have been tricked by false promises and lies and asked to walk along the beach, only to be summarily eaten by the mortgage companies, their servicers, and the courts and county sheriffs who have supported them.

**19.**     "The Sun was shining on the sea, shining with all its might….and this odd because it was the middle of the night."

**20.**     Plaintiff now asks this Court to open the shudders and let the light of day shine on this sham, this megalithic lie repeated ten million times which has all but destroyed the US economy.

**21.**     Defendant Wells Fargo Bank, N.A., may well claim that estoppel prevents the Plaintiff from raising these defenses, because Hal Kuder should not have transferred his interests or obligations without their permission.

**22.**     However, Hal Kuder was not in default, nor even significantly delinquent, when he transferred his interests to the Plaintiff, and estoppel is not available to the Defendants in the present case.  Lombardo v. Santa Monica Young Men's Christian Association (1985) 169 CalApp3d 529, 537, 215 CalRptr 224, 228, sets out the elements requisite to relief in such an action:

> (1) a contract sufficiently definite in its terms to be enforced; (2) that the contract was just and reasonable; (3) that the plaintiff performed his side of the bargain; (4) that the promissor failed to perform; (5) that the contract was supported by adequate consideration; (6) that the remedy at law is inadequate; and (7) where the contract was oral, the complaint also must allege that defendant is estopped to rely on the Statute of Frauds because failure to enforce the contract would

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*                               -5-

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

result in either unconscionable injury to plaintiff or the unjust enrichment of defendant.

(citations omitted, emphasis added.)

**23.** All promisors (including Wells Fargo Bank) implicitly, if not explicitly, promise or affirm that they will follow the common law, as well as the statutory law, guaranteeing to each contracting party promisee to comport themselves by conduct in full compliance with all the guarantees and protections of common law, including but not limited to the doctrines of "holder in due course" and "privity of contract."

**24.** Hal Kuder was entitled to void or nullify both his note to Wells Fargo and his contract, based on Wells Fargo's utter failure to conform to the common strictures of contract in good faith and fair dealing, and Hal Kuder has assigned all his rights, title, and interest to Plaintiff Charles Edward Lincoln, who now brings this lawsuit, showing for causes of action as follows:

## COUNT I: DECLARATORY JUDGMENT: NO VALID CONTRACT EXISTS

**25.** Plaintiff realleges the above and foregoing paragraphs 1-24 of this First Amended Complaint and incorporates the same by reference as if fully copied and restated herein below.

**26.** Under California Civil Code §§1549=1550 *et seq.,* a contract is an "agreement to do or not to do a certain thing" which requires mutual promises of detrimental undertaking between at least two parties; the detrimental undertakings are the bargained for exchange known as "consideration."

**27.** In June of 2003, Plaintiff's assignor (predecessor in interest) Hal Kuder pledged his real estate "lawfully seized" to Wells Fargo Bank, but it is difficult to determine from the record what, if anything, Wells Fargo promised to do in exchange, aside from insuring its own power to collect money from Hal Kuder; in particular, Wells Fargo never promised to transfer any money from itself to Hal Kuder, although it required Hal Kuder to sign a note acknowledging debt.

**28.** Plaintiff alleges that Hal Kuder's obligation to Wells Fargo constituted and was treated as an asset to Wells Fargo, providing only detriment from Hal Kuder but incurring no detriment on Wells Fargo's part, with no benefit flowing from Wells Fargo itself to Hal Kuder, and therefore not constituting valid consideration within the meaning of California Civil Code §1605.

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*

-6-

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

29.     A contract concerning real property is not binding on either party unless its obligations are mutual and reciprocal. *Prather v. Vasquez,* 162 Cal. App. 2d 198, 327 P.2d 963 (1958).

**30.     An unenforceable contract as between the two original parties transfers no right title or interest in said property; Hal Kuder's contract with Wells Fargo lacked bilateral detriment and mutuality and is therefore unenforceable by Wells Fargo.**

31.     Where one party elicits promises from another but neither promises nor undertakes any action detrimental to itself, that party has not "contracted" with the other.

32.     Wells Fargo neither promised nor did transfer its own money to Hal Kuder, but the money of an unidentified third party ("Fannie Mae" or "Freddie Mac").

33.     Whereas on page 3 of the Deed of Trust, tendered by Wells Fargo Bank as Exhibit A to its "Request for Judicial Notice" filed on March 16, 2009,  it is recited that "Borrower Covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the property and that the property is unencumbered, except for encumbrances of record...." And on page 2 of the same Deed of Trust the term "loan" is defined as "the debt evidence by the note, plus interest, any prepayment charge and late charges due under the note, and all the sums due under this Security instrument, plus interest", nowhere is it affirmed or explained that the loan proceeds come from the "Lender" Wells Fargo; indeed it is specifically stated (again on page 2) that "the Note states that Borrower owes Lender Three Hundred Twenty Two Thousand Six Hundred Ninety Nine and 00/100 dollars, plus interest" NOWHERE DOES IT STATE THAT WELLS FARGO WAS THE LAWFUL OWNER OF THE MONEY IT WAS DELIVERING TO HAL KUDER, NOR EVEN THAT THE MONEY WAS ADVANCED AGAINST THE CREDIT OF WELLS FARGO, NOR ANY OTHER INDICATION OF DETRIMENTAL ACTION PROMISED OR UNDERTAKEN BY WELLS FARGO BANK.

34.     Plaintiff alleges and will show, pursuant to §§1614–1615 of the California Civil Code, that Wells Fargo provided nothing of any value to Hal Kuder, in that Wells Fargo cannot show that it

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*

-7-

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

promised to transfer or did in fact transfer anything actually belonging to or possessed by Wells Fargo to Hal Kuder; wherefore, no valid encumbrance was created by the Deed of Trust or Mortgage Contract between Hal Kuder and Wells Fargo, despite the existence of a written instrument which creates a rebuttable presumption of consideration under California law.

**35.**     In short, the "loan" document does not indicate or even substantially suggest that Wells Fargo ever actually took any action detrimental to itself, but the purpose of the written instrument was to confirm and specify that Hal Kuder had given up things of value, to his own detriment, and would be required to give up more things of value, while Wells Fargo promises nothing, and Plaintiff alleges that Wells Fargo in fact did nothing (except to collect payments).

**36.**     This is standard mortgage finance industry practice, but that fact that it is common practice, does not mean that common practice satisfies the California common or statutory law of contractual viability because the consideration for a promise must be an act or a return promise, bargained for and given in exchange for the promise. *Prather v. Vasquez, supra.*

**37.**     A mortgage is originated after a broker or "originating institution" receives a series of promises from a "borrower"; these promises take the form of a mortgage contract and a negotiable instrument known as a "promissory note."

**38.**     The originator typically neither promises nor undertakes any action detrimental to itself, while soliciting and receiving a large number of promises and actions detrimental to the note grantor or borrower.

**39.**     A promissory note is securitized by a transfer of the "borrower's" or grantor's note into a bundle of similar notes, group ranked and rated by FICO scores, date, location, and value of property, into a Mortgage-Backed Equity or Collateral Backed Obligation (MBE or CBO).

**40.**     Once a promissory note is transferred into a securitized bundle, the originator or initial lender is no longer "holder in due course" of said note as a matter of law, and is no longer in privity with the "borrower" or original grantor.

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

-8-

1

2

3   **41.**    Wells Fargo Bank securitized Hal Kuder's mortgage and note and in fact transferred legal

4 and beneficial interest in that note to an unknown party.

5   **42.**    Wherefore and accordingly, Plaintiff prays first that this Court will declare that the contract

6 between Hal Kuder and Wells Fargo Bank was unsupported by any detrimental promises or

7 performance on behalf of Wells Fargo Bank, pursuant to mortgage finance industry and custom,

8 and in additionally or in the alternative that this Court will declare and adjudge that Wells Fargo,

9 having securitized the mortgage, was no longer the holder in due course of Hal Kuder's note and

10 had no right title or interest in the enforcement or collection of that note.

11   **43.**    Wherefore and accordingly, Plaintiff prays that this Court will declare and adjudge that no

12 valid contract exists or ever existed between Hal Kuder and Wells Fargo Bank, and that Hal Kuder

13 was entitled to transfer all his right, title, and interest in the property at 4 Via Corbina to Plaintiff

14 Charles Edward Lincoln, to whom quiet title should now be awarded.

15 **COUNT II: CAL-WESTERN RECONVEYANCE CORP, NORTHWEST TRUSTEES, AND**

16 **THE FIRST AMERICAN DEFENDANTS KNEW OR SHOULD HAVE KNOWN**

17   **44.**    Plaintiff realleges paragraphs 1-43 of this First Amended Complaint and incorporates the

18 same by reference as if the same were fully copied and restated herein below.

19   **45.**    Exhibits B and C to Wells Fargo's March 16, 2009, Request for Judicial Notice includes

20 Notices of Trustee's Sale filed by CAL-WESTERN RECONVEYANCE CORPORATION; the

21 Idaho Trustee engaging in mass non-judicial foreclosure is NORTHWEST TRUSTEES.

22   **46.**    Plaintiff alleges that CAL-WESTERN RECONVEYANCE CORPORATION,

23 NORTHWEST TRUSTEES, and the First American Defendants knew or should have known the

24 true nature of the contract between WELLS FARGO and HAL KUDER because that agreement

25 conformed to common mortgage-finance industry practice, custom, and procedure, all of which

26 rendered the contract either void or voidable according to California and Idaho law, because it is

27 inconceivable that these industry specialists did not realize and recognize the disconformity

28

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

-9-

between common law and statutory contractual rights and the wide-spread industrial practice of securitized mortgages based on mortgage contracts which cost nothing to the "lender" to lend beyond very minor origination costs.

**47.     Plaintiff alleges that, in fact, Cal-Western Reconveyance Corporation, Northwest Trustee, and the First American Title Defendants could not possibly have acted in good faith within the meaning of California Civil Code §2924(b), because the contractual terms recited even in the deed of trust submitted by Defendants on March 16, 2009, are so one-sided and devoid of any obligation to perform any act on the part of Wells Fargo Bank that real estate professionals knew or should have known that they were in fact participating in and facilitating a fraud.**

**48.**     The nature of the fraud was precisely that Wells Fargo claimed to have a contract based on a written instrument, which clearly delineates that all consideration flows one way, and which does not impose a single affirmative duty on Wells Fargo to provide ANYTHING of value to Hal Kuder (or anyone else).

**49.**     Nor can Wells Fargo show that, as a matter of fact, it DID provide anything of value (nor anything which it owned or possessed, nor any "service" other than debt collection on its own behalf) to Hal Kuder.

**50.**     To the degree that California Civil Code §§1614 and 2924 afford any legal immunity or protection to fraudulent devices in mortgage finance, those provisions of the California Civil Code should be declared unconstitutional impairments on the obligations of contract forbidden to the States and the Federal Government under the Constitution of the United States of America.

<u>**COUNT III: QUIET TITLE to 4 VIA CORBINA**</u>

**51.**     Plaintiff Charles Edward Lincoln, III, realleges paragraphs 1-50 of this First Amended Complaint and incorporate the same by reference as if fully copied and restated herein below.

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*                    - 10 -

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

1

2

3   **52.**     Plaintiff now sues for quiet title to 4 Via Corbina pursuant to the California Action to Quiet

4   Title Statute contained in Cal. Code Civ. Proc. §760.010-§765.020.

5   **53.**     As authorized by Cal. Code Civ. Proc. §760.020, Plaintiff asserts this claim to establish his

6   title to 4 Via Corbina and other real estate in California against the adverse claims of Wells Fargo

7   Bank, its Trustee Cal-Western, and Michael D. Harris, formerly Trustee of the Kuder Family Trust.

8   **54.**     Jurisdiction and Venue are proper pursuant to §§760.040-769.050 because 4 Via Corbina,

9   the principal and most valuable part of the property formerly belonging to Hal Kuder, Jr.,

10   Plaintiff's assignor and transfer (predecessor in interest) for which quiet title is sought, is located

11   within the Santa Ana Division of the United States District Court for the Central District of

12   California.

13   **55.**     Plaintiff will file a *lis pendens* as required by §761.010 with the County Clerk of Orange

14   County, California, and San Bernardino County California, as well as Canyon County, Idaho, and

15   Volusia County, Florida (covered by quiet title laws of Idaho and Florida, respectively).

16   **56.**     Pursuant to §761.020, Plaintiff identifies the principal property as 4 Via Corbina, in Rancho

17   Santa Margarita, California 92688, being legally described as Lot 15 of Tract No. 15607, as shown

18   on a map recorded in Book 773, at Page 35 to 39, inclusive of miscellaneous maps, records of

19   Orange County, California.

20   **57.**     In addition, Plaintiff identifies other property subject of this suit in California as 7431 and

21   7433 Apache Trail, Yucca Valley, California 92284, being legally describe as Lot 85 of Tract

22   3004, as per map recorded in Book 41, pages 52 through 54, inclusive of maps, in the Office of the

23   County Recorder of San Bernardino County.

24   **58.**     **Plaintiff asks and prays for relief that this Court to quiet title in him, because Wells**

25   **Fargo's encumbrance on the subject property entirely depends on a contract with Hal Kuder,**

26   **Jr., which was either void *ab initio* or voidable by Plaintiff as assignee and transferee**

27   **(successor in interest) to Hal Kuder for the simple reasons that (a) Wells Fargo undertook no**

28

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*                           - 11 -

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

**to assume and accept no detriment to itself nor any entity under its control, and there was accordingly no mutuality of consideration, (b) even if Wells Fargo were a bona fide contracting party on origination, after securitization of Hal Kuder's note, Wells Fargo surrendered its status as holder in due course of Hal Kuder's note, and ceased to have any privity of contract with Hal Kuder, Jr., or his successors in interest whatsoever.**

59.     To this end, Plaintiff asks this Court to devise a means of publishing or effectively noticing the purchasers of Hal Kuder, Jr.'s securitized mortgage note to appear and answer this complaint or be forever barred from doing so, even if the John Does or Jane Roes or Corporate Coes who are the actual holder in due course of Hal Kuder's note reside or are incorporated or do business abroad.

60.     Quiet title should be established in Plaintiff as of the date he received title from Hal Kuder, Jr., which is to say on or about June 5, 2008.

61.     Plaintiff is also entitled to Quiet Title as against Michael D. Harris as former trustee of the Kuder Family Trust because the Kuder Family Trust was either dissolved or transferred all of its property to Plaintiff, by the act of Suzy Kuder, who was successor to Michael D. Harris although Michael D. Harris appears never to have executed formal deeds to Suzy Kuder, although he has elsewhere admitted to having resigned as trustee.

62.     **Michael D. Harris never provided an accounting of his actions as Trustee to the Kuder Family trust, and Plaintiff as assignee of all Hal Kuder Jr.'s rights, title, and interests relating to his properties asks that this Court order Michael D. Harris to account to Plaintiff for his actions and omissions as trustee of the Kuder Family Trust, and reimburse Plaintiff for losses to the Kuder Family Trust, whose assets have all been transferred and assigned to the Plaintiff Charles Edward Lincoln, III.**

63.     **As required by law, Plaintiff hereby affirms and VERIFIES by his declaration under penalty of perjury that all statements of fact herein alleged are within Plaintiff's knowledge**

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

- 12 -

and true and correct, and that all statements of opinion herein articulated are held by Plaintiff in good faith after reasonable investigation.

64.     Plaintiff has furthermore attached his Declaration (in lieu of affidavit) as Exhibit D to this his First Amended Complaint.

65.     Plaintiff reserves the right to amend this Complaint for Quiet Title to conform with California law before any final determination of the legal sufficiency of this Complaint.

66.     Pursuant to §764.010, Plaintiff prays that the Court will hold a hearing to examine into and determine Plaintiff's Claims against all of the Defendants, and that upon Final Trial-by-Jury, demand for which is hereby made and tendered, that the Court will award Plaintiff quiet title to all property, the subject of this lawsuit, ordering that all encumbrances and liens, including the Deed of Trust filed by or on behalf of Defendants Wells Fargo Bank, First American Title Insurance Company, First American, and Cal-Western Reconveyance Corporation be ordered stricken and removed from the public property records of California, or else expunged and marked as VOID if otherwise required to remain in the public property records of each relevant county.

## COUNT 4: 402-404 ANDREW COURT, CALDWELL, IDAHO: NO VALID CONTRACT

67.     Plaintiff Charles Edward Lincoln, as assignee of all the rights of Hal Kuder, Jr., realleges and incorporates the above ¶¶1-66 of this First Amended Complaint as if fully copied and restated herein below as they may relate to Lincoln's claims against Wells Fargo concerning property located at 402-404 Andrew Court, Caldwell, Idaho 83605.

68.     The mortgage contract with Hal Kuder, Jr., and Wells Fargo was void *ab initio* because Wells Fargo offered no promise supported by detrimental consideration, i.e., no promise which cost Wells Fargo, as promissory, to surrender anything of value.

69.     Agents of Wells Fargo Bank have attempted to intimidate the Plaintiff's tenants at 402-404 Andre Court in Caldwell, Idaho 83605, falsely stating that ownership & title had changed.

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*

- 13 -

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

**70.**    These agents included Coldwell Banker and Plaintiff seeks damages against Wells Fargo for tortuous interference with contract/tortuous interference with advantageous business relationship as well as damages for slander of title arising from its claims based on a void contract.

**71.**    Plaintiff asks that this Court declare and adjudge that consideration provided by a third party at no cost to the promisor is not effective, i.e. detrimental, consideration in support of mutal promises which would support a valid contract.

**72.**    In Idaho, **consideration** includes mutually detrimental action by the promisee and promisor which is bargained for and given in exchange for the promise. It may also consist of a **detriment** to the promisee or a benefit to the promisor. *Lettunich v. Key Bank Nat'l Ass'n,* 141 Idaho 362, 109 P.3d 1104 (Idaho 2005).

**73.**    Idaho also recognizes the implied covenant of good faith and fair dealing is a covenant implied by law in the parties' contract. It arises only regarding terms agreed to by the parties. The covenant requires that the parties perform, in good faith, the obligations imposed by their agreement.  *Id.,* 141 Idaho 362 (Idaho 2005).

**74.**    Wells Fargo's contract with Hal Kuder, Jr., was not in good faith because it did not disclose the absence of any detriment to Wells Fargo Bank.

**75.**    This Court should declare and adjudge that Wells Fargo's contract with Hal Kuder, Jr., was void ab initio, and therefore not enforceable as to Hal Kuder or any of his successors or assignees, including the Plaintiff in this case.

## COUNT 5: NORTHWEST TRUSTEE SERVICES

**76.**    Plaintiff Charles Edward Lincoln realleges paragraphs 1-75 and incorporates all of the material allegations and contentions of the same by reference as if fully copied and restated herein.

**77.**    Plaintiff prays that this Court find, declare, and adjudge upon final trial-by-jury that Defendant NORTHWEST TRUSTEE SERVICES knew or should have known in the exercise of reasonable diligence that Defendant Wells Fargo Bank had no valid authority to designate

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*
- 14 -

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

1

2

3  NORTHWEST TRUSTEE SERVICES as an agent or lawful delegate for the collection of any debt

4  against Hal Kuder, Jr., or any of his assigns or successors because:

5  **78.**  Defendant NORTHWEST TRUSTEE SERVICES, like Cal-Western Conveyance and the

6  Florida Default Law Group, PL, knew or should have known in the exercise of reasonable

7  diligence, prior to setting a nonjudicial foreclosure sale for 404 Andrew Court, Caldwell, Idaho

8  83605 on April 10, 2009, that Defendant Wells Fargo Bank securitized Hal Kuder's Mortgage Note

9  and Contract and transferred both the legal and beneficial interests to other parties.

10  **79.**  WHEREFORE, Plaintiff prays that this Court find, declare, and adjudge upon final trial-by-

11  jury that NORTHWEST TRUSTEE SERVICES has acted unlawfully, and should be enjoined from

12  further actions, because NORTHWEST TRUSTEE SEERVICES knew or should have known prior

13  to setting a nonjudicial foreclosure sale for 404 Andrew Court, Caldwell, Idaho 83605 on April 10,

14  2009, that Defendant Wells Fargo was no longer "holder in due course" or otherwise in privity with

15  Hal Kuder, and was thus lawfully without power to seek to enforce its mortgage contract or Hal

16  Kuder's note against him, or any of his assigns or successors, including the plaintiff.

17  **80.**  WHEREFORE, NORTHWEST TRUSTEE SERVICES knows or should known that Wells

18  Fargo Bank, NA no longer had legal right, title, nor any equitable or beneficial interest in the

19  enforcement of Hal Kuder's note, and should be both temporarily and permanently enjoined from

20  proceeding against 404 Andrew Court, Caldwell, Idaho 83605.

21  <u>**COUNT 6: QUIET TITLE**</u>

22  **81.**  Plaintiff Charles Edward Lincoln realleges ¶¶1-80 of this First Amended Complaint and

23  incorporates the material allegations and legal contentions set forth within same by reference as if

24  fully copied and restated herein.

25  **82.**  Plaintiff Charles Edward Lincoln prays for Quiet Title to 402 and 404 Andrew Court,

26  Caldwell, Idaho 83605 pursuant to Idaho Law as against Wells Fargo Bank and all persons or

27  entities, including but not limited to NORTHWEST TRUSTEE SERVICES, INC., who purports to

28

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*                                    - 15 -

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

act on behalf of Wells Fargo; Plaintiff reserves the right to amend and supplement this count with specific allegations for damages resulting from Coldwell Banker's tortuous interference, or even trespass, acting as Wells Fargo's agent, and on behalf of Northwest Trustees.

## COUNT 7: IMPAIRMENT OF THE OBLIGATIONS OF CONTRACT

**83.**     Plaintiff Charles Edward Lincoln realleges ¶¶1-82 of this First Amended Complaint and incorporates the same by reference as if the same were fully copied and restated herein.

**84.**     Article I, Section 10, Clause 1, of the United States Constitution, known as the "Contracts Clause" prohibits the states from passing any law impairing the Obligation of Contracts.

**85.**     Plaintiff asks this Court to declare and adjudge that this "Contracts Clause" specifically forbids the immunization of any action which deprives all or any class of people (such as consumer mortgagors) of any of the common law rights of contract or of full civil rights in the protection of their rights to contract, access to the courts, and due process of law in the protection of rights acquired by contract, including but not limited to the rights to own, use, and enjoy property protected by 42 U.S.C. §§1981, 1982.

**86.**     Plaintiff brings this action pursuant to 42 U.S.C. §§1981, 1982, 1983, and 1988(a) to declare that either facially, or as applied, California Civil Code sections 2924-2924i (providing "exhaustive" procedures for non-judicial foreclosure), as well as Idaho General Laws, Mortgages & Deeds §45-1506 [Chapter 15, §§45-1501-1515], and Florida Statutes §§673.3021 & 673.3091 [§§673.3011-673.3121 generally] have each separately, in their respective states, recently (over the past 15-30 years) been applied and allowed to be exercised in such a way that the common law rights to limit collection and enforcement to "holders in due course" and other privileges inherent in the common law doctrine of "privity of contract" have been all but obliterated.

**87.**     Plaintiff asks and prays for a declaration that it is not, cannot, and will not be a defense to the unconstitutionality of the application of these statutes if the recent customary, practical, and political reasons for the infringements and impairments of the obligations of contract effected by

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*

- 16 -

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

applications of these law is the implementation of Federal Reserve Monetary policy having quasi-official status as an express or implied policy of the United States Federal government.

**88.** Plaintiff further asks and prays for a declaration that no state has 11th Amendment immunity for any officials (such as county clerks or sheriffs or constables) who have participated as a matter of custom, practice, and policy in the implementation of unconstitutional statutes which impair the obligations of contract, such as routinely allowing and authorizing judicial or non-judicial foreclosures which do not require proof of common law or constitutional standing as holders in due course in privity of contract based on contracts which were not void or voidable.

**89.** Utilizing the power to adopt and modify the provisions of common law provided by 42 U.S.C. §1988(a), Plaintiff prays that this Court fashion appropriate remedies to prevent and correct state policies infringing upon the right to make and enforce contracts according to common law and the right to keep and own property according to common law which may be found to violate the rights of American citizens by impairment of the obligations of contract in violation of 42 U.S.C. §1981, 1982, and other provisions of law.

## COUNT 8: QUIET TITLE IN FLORIDA

**90.** Plaintiff Charles Edward Lincoln realleges ¶¶1-90 of this First Amended Complaint and incorporates the same by reference as if fully copied and restated herein.

**91.** The Florida Default Group, PL, is a Tampa, Florida based "Foreclosure Mill" founded and still presided over by Michael Echeverria, one of the leading practitioners of fraudulent, predatory foreclosures in all of North America, according to a modern day Émile Zola (William Trudelle, also of Tampa) whose *J'Accuse* concerning Michael Echeverria can be found at http://www.WoodwardLaw.com/home.

**92.** The real estate in Florida, subject of this lawsuit is located at 1632 Espanola Avenue, Holly Hill, Florida 32117, whose legal description is "all of Lot 32 and 33, and Lot 31 except the

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*                   - 17 -

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

northerly 24 feet, Block 11, Section "B", Rio Vista, According to the Map or Plat thereof as recorded in Plat Book 6, Page 150, of the Public Records of Volusia County, Florida.

**93.**     The Wells Fargo Mortgage for 1632 Espanola is included in Exhibt C, pages 15-38.

**94.**     This Wells Fargo Mortgage, carefully examined, is executed on the same form and is in all respects identical to the Deed of Trust submitted by Wells Fargo on March 16, 2009, as an exhibit to its Request for Judicial Notice concerning 4 Via Corbina, showing that Wells Fargo neither promised nor actually undertook any detrimental action in Hal Kuder's favor, but that all detrimental actions on Hal Kuder's part favor Wells Fargo without any mutuality of consideration between the named parties.

**95.**     Thus, the mortgage for 1632 Espanola is as illegal under Florida Law as the Deed of Trust (characterized under California law as a Mortgage) was in California.

**96.**     Plaintiff alleges that full disclosure and accounting of Wells Fargo's handling of Hal Kuder's Note in Florida will reveal that the note was sold and transferred to other parties and that Wells Fargo is therefore not entitled to judicial reestablishment of the note as requested in its Original Complaint (Exhibit C).

**97.**     Plaintiff prays for Declaratory Judgment in his favor, that quiet title in 1632 Espanola be vested in him free and clear of any mortgage or other encumbrance from Wells Fargo Bank or any of its agents or affiliates.

### COUNT 9: PERMANENT INJUNCTION AGAINST PREDATORY PRACTICES

**98.**     Plaintiff realleges ¶¶1-97 of this First Amended Complaint and incorporates the same by reference as if fully copied and restated herein below.

**99.**     Plaintiff additionally prays for a Declaratory Judgment and injunction as follows,

**100.**    Plaintiff further prays for a declaratory judgment that the nationwide policies of Wells Fargo Bank and the trustees or law firms which collect and enforce its debts by foreclosure are unconscionable and predatory.

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

- 18 -

**101.**     Plaintiff further asks this Court upon final trial-by-jury and entry of declaratory judgment after jury-made findings of fact to render an injunction against Wells Fargo, Cal-Western Conveyance, Northwest Trustees and Florida Default Law Group, P.L., from continuing their predatory lending and foreclosure operations in the foreclosure business in California, Florida, and Idaho, ncluding but not limited to an injunction against Wells Fargo accepting mortgages wherein Wells Fargo made no actual investment, an injunction against Wells Fargo collecting or attempting to enforce securitized mortgages in its own name or as "nominee", "agent" or "deputy" for any unknown party, without competent written designation of agency or power of attorney identifying the true holder in due course of any negotiable instrument or other obligation.

**102.**     Plaintiff further and finally seeks and asks this Court to enter a permanent injunction against Cal-Western Reconveyance, Northwest Trustees, and the Florida Default Law Group from collecting or foreclosing any note or other obligation for which the (1) holder in due course cannot be verified by full and complete accounting of the handling and disposition of the original note as a negotiable instrument made payable in effect to the "bearer on demand", enforcing any contract wherein privity of contract between original signing parties cannot likewise be verified by actuarial investigation, and finally, from enforcing by foreclosure or any other collection technique any mortgage contract or note in which securitization cannot be absolutely excluded as a possible disposition of the note.

## TRIAL-BY-JURY

**103.**     Plaintiff demands a trial-by-jury of all issues of fact so triable, and all mixed questions of law and fact, triable by jury as a matter of controlling case law and United States Supreme Court precedent, such as mixed questions concerning sufficiency of consideration, agency, and fraud. Plaintiff also moves and requests that an advisory jury be empanelled to hear and rule on all other matters to the extent permitted by law, with appropriate instructions distinguishing the advisory from the binding issues presented to the jury for decision and resolution.

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*
- 19 -

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

## **PRAYER FOR RELIEF**

Plaintiff Charles Edward Lincoln prays for judgment against all defendants for the relief requested above, including but not limited to declaratory judgment regarding the rights and status of each party in relation to the property at 4 Via Corbina, Rancho Santa Margarita, California 92688, 7431 & 7432 Apache Trail, Yucca Valley, California 92284, and 402-404 Andrew Court, Caldwell, Idaho 83605 and 1632 Espanola Trail, Holly Hill, Fllorida, and the interests assigned to Plaintiff in such property and the notes, transactions, and occurrences relating to the same.

Respectfully submitted,

Thursday, April 16, 2009

By

Charles Edward Lincoln, Plaintiff, *pro se*
6102 Valleyview Drive, Lago Vista, TX 78645
512-968-2500, charles.e.lincoln@att.net

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*
-20-

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

## PROOF OF SERVICE

I, the undersigned, declare that I am and was a the time of service of the papers herein described and identified, over the age of 18 years of age, and am not a party to this action.  My mailing address is 603 Elmwood, #6, Austin, Texas 78705.

On April 16, 2009, I served the above-and-foregoing Plaintiff's First Amended Complaint on:

THOMAS N. ABBOTT
PITE DUNCAN, L.L.P.
4375 JUTLAND DRIVE, SUITE 200
P.O. BOX 17395
SAN DIEGO, CALIFORNIA 92177-0935

VIA FACSIMILE: 619-590-1385

I personally sent to the addressee's facsimile number a true copy of the above-and-foregoing Response and Ex-Parte Motions, I also attached a copy to an e-mail delivered to

tabbott@piteduncan.com

on this same date.

I make this declaration under penalty of perjury as authorized by 28 U.S.C. §1746 and pursuant to the law of the United States of America.

Executed on this Thursday the 16th day of April, 2009, in Austin, Texas.

_____

Peyton Yates Freiman
603 Elmwood, #6
Austin, Texas 78705
Telephone: 512-923-1889

e-mail: freimanthird@gmail.com

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*

-21-

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

1
2
3
4
5
6
7
8
9
10
11
12
13

# *EXHIBIT A:*
# *Hal Kuder's Deeds & Assignments of Rights to*
# *Charles Edward Lincoln*

18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**CHARLES E. LINCOLN V. WELLS FARGO BANK**
**ET AL.CENTRAL DISTRICT OF CA**

- 22 -

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

**RECORDING REQUESTED BY:**
**MAIL TAX STATEMENTS TO:**
CHARLES LINCOLN III
C/O PEYTON FREIMAN
300 EAST RIVERSIDE DRIVE #132
AUSTIN, TEXAS, 78704

**WARRANTY DEED**

Property address: 4 Via Corbina, Rancho Santa Margarita, CA 92688

City Tax: 0 dollars as it is being gifted
Transfer Tax: 0 dollars as it is being gifted

On this the ___5___ day of June, 2008, the KUDER JR FAMILY TRUST by and through its Trustee Susy Kuder, a single woman, did execute this deed, for valuable consideration, receipt of which is hereby acknowledged, conveying, delivering, granting and transferring all the legal right, title, and equitable interest, without division or reservation, to Charles Edward Lincoln III, a resident of the state of Florida, with mailing address 325 Moorings Cove Drive, Tarpon Springs, Florida, 34689, in the following described land, situated, lying, and being located in Orange County, California, to wit:

LOT 15 OF TRACT NO. 15608, AS SHOWN ON A MAP RECORDED IN BOOK 773, AT PAGE 34 TO 39, INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA

This conveyance is made without warranty or stipulation as to any material fact or legal condition of the property, except that the Grantor KUDER JR FAMILY TRUST by and through its Trustee Susy Kuder has delivered all original records concerning this property to the aforementioned grantee.

Signed and executed in Orange County, California, on this the ___5___ day of June, 2008, for ten dollars in hand and other valuable consideration.

In witness whereof, Grantor has hereunto set Grantor's hand and seal on this ___5___ day of June, 2008. Signed, sealed, and delivered in our presence:

_Susy Kuder_ Trustee

**GRANTOR, KUDER JR FAMILY TRUST**
**Susy Kuder, Trustee**

**NOTARY'S JURAT**

State of California County of _ORANGE_    Subscribed and sworn to (or affirmed) before me on this ___5___ day of _June_, 200_8_, by _Susy Kuder_, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

(seal)

Signature _Sara Karacuschansky_

Printed Name: _SARA KARACUSCHANSKY_

My Commission Expires: _1-19-2009_

SARA KARACUSCHANSKY
Commission # 1537394
Notary Public - California
Orange County
My Comm. Expires Jan 19, 2009

### *Assignment and Associated Rights in Notes and Obligations*

On this the 5th day of June, 2008, Hal Kuder JR., grantor, assignor, transferor, a single man, in conjunction with his Trustee Susy Kuder, a single woman, formerly married to but now legally divorced from Hal Kuder Jr., executed this Assignment of Rights to grantee Charles Edward Lincoln, III, for the purpose of executing this warranty, and thereby California wherefore

Witnesseth, that said grantors, assignors, transferors, Hal Kuder Jr. and Susy Kuder for and in consideration of the sum of $10.00 (ten and no/100 dollars) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt of which is hereby acknowledged, has granted (and did on June 5th 2008, originally sell) unto Charles Edward Lincoln III, and hereby confirms unto the grantee all that certain lot situated in Orange County, California, as well as all their legal and equitable interest in the notes, claims conveying, deliver, granting, and transferring all their legal right, title, and equitable interest in the hereinafter-described land or real estate, situated, lying and being located in Orange County, and obligations which they granted or contractually agreed to with any party arising from and associated with the following described land or real estate (being a lot), situated in Orange County, California:

LOT 15 OF TRACT NO. 15608, AS SHOWN ON A MAP RECORDED IN BOOK 773, AT PAGE 34 TO 39, INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA

And said grantors, assignors, transferors, do hereby fully quit and abandon unto Charles Edward Lincoln III, all of his and her claim in any legal or equitable interest in said land or real estate (being a lot), to said land or real estate, as well as their claims to any note, claims, or obligations which he and she, together, granted or contractually agreed to with respect to any party to Charles Edward Lincoln III, to have and to hold, from this day forward, without limitation or qualification whatsoever.

In witness whereof, grantor, assignor and transferor have set unto the two grantor's hand and seal the day of the above-and-foregoing quite claim deed, to wit 5th June _____ 2008.

Signed, sealed and delivered in our presence:

_Susy Kuder_
_____
GRANTOR, Susy Kuder
4 Via Corbina, Rancho Santa Margarita
Orange County, California, 92688

_____
GRANTOR, Hal Kuder Jr.

_____
1st Witness  Monica Patta Suarez

_Carmen Franco_
_____
2nd Witness
CARMEN FRANCO

_____
ACCEPTED, Charles Edward Lincoln III

### _Assignment and Associated Rights in Notes and Obligations_

On this the 5ᵗʰ day of June, 2008, Hal Kuder JR., grantor, assignor, transferor, a single man, in conjunction with his Trustee Susy Kuder, a single woman, formerly married to but now legally divorced from Hal Kuder Jr., executed this Assignment of Rights to grantee Charles Edward Lincoln, III, for the purpose of executing this warranty, and thereby California wherefore

Witnesseth, that said grantors, assignors, transferors, Hal Kuder Jr. and Susy Kuder for and in consideration of the sum of $10.00 (ten and no/100 dollars) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt of which is hereby acknowledged, has granted (and did on June 5ᵗʰ 2008, originally sell) unto Charles Edward Lincoln III, and hereby confirms unto the grantee all that certain lot situated in Orange County, California, as well as all their legal and equitable interest in the notes, claims conveying, deliver, granting, and transferring all their legal right, title, and equitable interest in the hereinafter-described land or real estate, situated, lying and being located in Orange County, and obligations which they granted or contractually agreed to with any party arising from and associated with the following described land or real estate (being a lot), situated in Orange County, California:

LOT 15 OF TRACT NO. 15608, AS SHOWN ON A MAP RECORDED IN BOOK 773, AT PAGE 34 TO 39, INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA

And said grantors, assignors, transferors, do hereby fully quit and abandon unto Charles Edward Lincoln III, all of his and her claim in any legal or equitable interest in said land or real estate (being a lot), to said land or real estate, as well as their claims to any note, claims, or obligations which he and she, together, granted or contractually agreed to with respect to any party to Charles Edward Lincoln III, to have and to hold, from this day forward, without limitation or qualification whatsoever.

In witness whereof, grantor, assignor and transferor have set unto the two grantor's hand and seal the day of the above-and-foregoing quite claim deed, to wit 5ᵗʰ June _____ 2008.

Signed, sealed and delivered in our presence:

GRANTOR, Susy Kuder
4 Via Corbina, Rancho Santa Margarita
Orange County, California, 92688

GRANTOR, Hal Kuder Jr.

1ˢᵗ Witness Mónica Parra Alvarez

2ⁿᵈ Witness
CARMEN FRANCO

ACCEPTED, Charles Edward Lincoln III

### Assignment and Associated Rights in Notes and Obligations

On this the 5th day of June, 2008, Hal Kuder Jr., grantor, assignor, transferor, a single man, in conjunction with his Trustee Susy Kuder, a single woman, formerly married to but now legally divorced from Hal Kuder Jr., executed this Assignment of Rights to grantee Charles Edward Lincoln III, for the purpose of executing this warranty, and thereby California wherefore

Witnesseth, that said grantors, assignors, transferors, Hal Kuder Jr. and Susy Kuder for and in consideration of the sum of $10.00 (ten and no/100 dollars) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt of which is hereby acknowledged, has granted (and did on June 5, 2008, originally sell) unto Charles Edward Lincoln III, and hereby confirms unto the grantee all that certain lot situated in Volusia County, Florida, as well as all their legal and equitable interest in the notes, claims conveying, deliver, granting, and transferring all their legal right, title, and equitable interest in the hereinafter-described land or real estate, situated, lying and being located in Volusia County, and obligations which they granted or contractually agreed to with any party arising from and associated with the following described land or real estate (being a lot), situated in Volusia County, Florida:

ALL OF LOT 32 AND LOT 33, AND LOT 31 EXCEPT THE NORTHERLY 24 FEET, BLOCK 11, SECTION "B", RIO VISTA, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 6, PAGE 150, OF THE PUBLIC RECORDS OF VOLUSIA COUNTY, FLORIDA.

And said grantors, assignors, transferors, do hereby fully quit and abandon unto Charles Edward Lincoln III, all of his and her claim in any legal or equitable interest in said land or real estate (being a lot), to said land or real estate, as well as their claims to any note, claims, or obligations which he and she, together, granted or contractually agreed to with respect to any party to Charles Edward Lincoln III, to have and to hold, from this day forward, without limitation or qualification whatsoever.

In witness whereof, grantor, assignor and transferor have set unto the two grantor's hand and seal the day of the above-and-foregoing warranty deed, to wit 5th June 2008.

Signed, sealed and delivered in our presence:

_____
GRANTOR, Susy Kuder
4 Via Corbina, Rancho Santa Margarita
Orange County, California, 92688

_____
1st Witness Mónica Pausa Alvarez

_____
2nd Witness
CARMEN FRANCO

_____
GRANTOR, Hal Kuder Jr.

_____
ACCEPTED, Charles Edward Lincoln III

### *Assignment and Associated Rights in Notes and Obligations*

On this the 5ᵗʰ day of June, 2008, Hal Kuder Jr., grantor, assignor, transferor, a single man, in conjunction with his Trustee Susy Kuder, a single woman, formerly married to but now legally divorced from Hal Kuder Jr., executed this Assignment of Rights to grantee Charles Edward Lincoln III, for the purpose of executing this warranty, and thereby California wherefore

Witnesseth, that said grantors, assignors, transferors, Hal Kuder Jr. and Susy Kuder for and in consideration of the sum of $10.00 (ten and no/100 dollars) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt of which is hereby acknowledged, has granted (and did on June 5ᵗʰ, 2008, originally sell) unto Charles Edward Lincoln III, and hereby confirms unto the grantee all that certain lot situated in Canyon County, Idaho, as well as all their legal and equitable interest in the notes, claims conveying, deliver, granting, and transferring all their legal right, title, and equitable interest in the hereinafter-described land or real estate, situated, lying and being located in Canyon County, and obligations which they granted or contractually agreed to with any party arising from and associated with the following described land or real estate (being a lot), situated in Canyon County, Idaho:

LOT 17, BLOCK 1, AUGUSTINA SUBDIVISION, CALDWELL, CANYON COUNTY, IDAHO, ACCORDING TO THE PLAT THEREOF, FILED IN BOOK 23 OF PLATS, PAGE 38, RECORDS OF SAID COUNTY.

And said grantors, assignors, transferors, do hereby fully quit and abandon unto Charles Edward Lincoln III, all of his and her claim in any legal or equitable interest in said land or real estate (being a lot), to said land or real estate, as well as their claims to any note, claims, or obligations which he and she, together, granted or contractually agreed to with respect to any party to Charles Edward Lincoln III, to have and to hold, from this day forward, without limitation or qualification whatsoever.

In witness whereof, grantor, assignor and transferor have set unto the two grantor's hand and seal the day of the above-and-foregoing quite claim deed, to wit 5ᵗʰ June _____ 2008.

Signed, sealed and delivered in our presence:

_Susy Kuder_
GRANTOR, Susy Kuder
4 Via Corbina, Rancho Santa Margarita
Orange County, California, 92688

GRANTOR, Hal Kuder Jr.

1ᵗ Witness Monica Parra Alvarez

Carmen Franco
2ⁿᵈ Witness
CARMEN FRANCO

_____
ACCEPTED, Charles Edward Lincoln III

**_Assignment and Associated Rights in Notes and Obligations_**

On this the 5ᵗʰ day of June, 2008, Hal Kuder Jr., grantor, assignor, transferor, a single man, in conjunction with his Trustee Susy Kuder, a single woman, formerly married to but now legally divorced from Hal Kuder Jr., executed this Assignment of Rights to grantee Charles Edward Lincoln III, for the purpose of executing this warranty, and thereby California wherefore

       Witnesseth, that said grantors, assignors, transferors, Hal Kuder Jr. and Susy Kuder for and in consideration of the sum of $10.00 (ten and no/100 dollars) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt of which is hereby acknowledged, has granted (and did on June 5ᵗʰ, 2008, originally sell) unto Charles Edward Lincoln III, and hereby confirms unto the grantee all that certain lot situated in  Canyon County, Idaho, as well as all their legal and equitable interest in the notes, claims conveying, deliver, granting, and transferring all their legal right, title, and equitable interest in the hereinafter-described land or real estate, situated, lying and being located in Canyon County, and obligations which they granted or contractually agreed to with any party arising from and associated with the following described land or real estate (being a lot), situated in Canyon County, Idaho:

LOT 18, BLOCK 1, AUGUSTINA SUBDIVISION, CALDWELL, CANYON COUNTY, IDAHO, ACCORDING TO THE PLAT FILED IN BOOK 23 OF PLATS, PAGE 38, RECORDS OF SAID COUNTY.

And said grantors, assignors, transferors, do hereby fully quit and abandon unto Charles Edward Lincoln III, all of his and her claim in any legal or equitable interest in said land or real estate (being a lot), to said land or real estate, as well as their claims to any note, claims, or obligations which he and she, together, granted or contractually agreed to with respect to any party to Charles Edward Lincoln III, to have and to hold, from this day forward, without limitation or qualification whatsoever.

       In witness whereof, grantor, assignor and transferor have set unto the two grantor's hand and seal the day of the above-and-foregoing quite claim deed, to wit 5ᵗʰ, June _____ 2008.

Signed, sealed and delivered in our presence:

_Susy Kuder_
_____
GRANTOR, Susy Kuder
4 Via Corbina, Rancho Santa Margarita
Orange County, California, 92688

_____
1ˢᵗ Witness Mónica Laura Alvarez

_Carmen Franco_
_____
2ⁿᵈ Witness
CARMEN FRANCO

_____
GRANTOR, Hal Kuder Jr.

_____
ACCEPTED, Charles Edward Lincoln III

## Assignment and Associated Rights in Notes and Obligations

On this the 5ᵗʰ day of June, 2008, Hal Kuder Jr., grantor, assignor, transferor, a single man, in conjunction with his Trustee Susy Kuder, a single woman, formerly married to but now legally divorced from Hal Kuder Jr., executed this Assignment of Rights to grantee Charles Edward Lincoln III, for the purpose of executing this warranty, and thereby California wherefore

Witnesseth, that said grantors, assignors, transferors, Hal Kuder Jr. and Susy Kuder for and in consideration of the sum of $10.00 (ten and no/100 dollars) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt of which is hereby acknowledged, has granted (and did on June 5ᵗʰ, 2008, originally sell) unto Charles Edward Lincoln III, and hereby confirms unto the grantee all that certain lot situated in San Bernardino County, California, as well as all their legal and equitable interest in the notes, claims conveying, deliver, granting, and transferring all their legal right, title, and equitable interest in the hereinafter-described land or real estate, situated, lying and being located in San Bernardino County, and obligations which they granted or contractually agreed to with any party arising from and associated with the following described land or real estate (being a lot), situated in San Bernardino County, California:

**LOT 85 OF TRACT 3004, AS PER MAP RECORDED IN BOOK 41 PAGES 52 THROUGH 54, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAN BERNARDINO COUNTY, CALIFORNIA**

And said grantors, assignors, transferors, do hereby fully quit and abandon unto Charles Edward Lincoln III, all of his and her claim in any legal or equitable interest in said land or real estate (being a lot), to said land or real estate, as well as their claims to any note, claims, or obligations which he and she, together, granted or contractually agreed to with respect to any party to Charles Edward Lincoln III, to have and to hold, from this day forward, without limitation or qualification whatsoever.

In witness whereof, grantor, assignor and transferor have set unto the two grantor's hand and seal the day of the above-and-foregoing warranty deed, to wit 5ᵗʰ, June _____ 2008.

Signed, sealed and delivered in our presence:

_Susy Kuder_

GRANTOR, Susy Kuder
4 Via Corbina, Rancho Santa Margarita
Orange County, California, 92688

_Monica Parra Alvarez_

1ˢᵗ Witness Monica Parra Alvarez

_Carmen Franco_

2ⁿᵈ Witness
CARMEN FRANCO

_Hal Kuder Jr_

GRANTOR, Hal Kuder Jr

_____

ACCEPTED, Charles Edward Lincoln III

**RECORDING REQUESTED BY:**
**MAIL TAX STATEMENTS TO:**
CHARLES LINCOLN III
C/O PEYTON FREIMAN
300 EAST RIVERSIDE DRIVE #132
AUSTIN, TEXAS, 78704

## WARRANTY DEED

Property address: 7431 & 7433 Apache Trail, Yucca Valley, California 92284

Transfer Tax: 0 dollars as its being gifted

On this the 5 day of June, 2008, the KUDER YV FAMILY TRUST by and through its Trustee, Susy Kuder, a single woman, did execute this deed, for valuable consideration, receipt of which is hereby acknowledged, conveying, delivering, granting and transferring all the legal right, title, and equitable interest, without division or reservation, to Charles Edward Lincoln III, a resident of the state of Florida, with mailing address 325 Moorings Cove Drive, Tarpon Springs, Florida, 34689, in the following described land, situated, lying, and being located in San Bernardino County, California, to wit:

LOT 85 OF TRACT 3004, AS PER MAP RECORDED IN BOOK 41 PAGES 52 THROUGH 54, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAN BERNARDINO COUNTY.

This conveyance is made without warranty or stipulation as to any material fact or legal condition of the property, except that the Grantor KUDER YV FAMILY TRUST by and through its Trustee Susy Kuder has delivered all original records concerning this property to her aforementioned grantee.

Signed and executed in Orange County, California, on this the 5 day of June, 2008, for ten dollars in hand and other valuable consideration.

In witness whereof, Grantor has hereunto set Grantor's hand and seal on this 5 day of June, 2008.

Signed, sealed, and delivered in your presence:

_Susy Kuder_ Trustee

**GRANTOR, KUDER YV FAMILY TRUST**
**Susy Kuder, Trustee**

## NOTARY'S JURAT

State of California County of CALIFORNIA   Subscribed and sworn to (or affirmed) before me on this 5 day of June, 20 09, by Susy Kuder, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

(seal)

Signature _Sara Karacuschansky_

Printed Name: SARA KARACUSCHANSKY

My Commission Expires: 1-19-2009

SARA KARACUSCHANSKY
Commission # 1537394
Notary Public - California
Orange County
My Comm. Expires Jan 19, 2009

**_Assignment and Associated Rights in Notes and Obligations_**

On this the ___5___ day of June, 2008, Hal Kuder Jr., grantor, assignor, transferor, a single man, in conjunction with his Trustee Susy Kuder, a single woman, formerly married to but now legally divorced from Hal Kuder Jr., executed this Assignment of Rights to grantee Charles Edward Lincoln III, for the purpose of executing this warranty, and thereby California wherefore

Witnesseth, that said grantors, assignors, transferors, Hal Kuder Jr. and Susy Kuder for and in consideration of the sum of $10.00 (ten and no/100 dollars) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt of which is hereby acknowledged, has granted (and did on June ___5___, 2008, originally sell) unto Charles Edward Lincoln III, and hereby confirms unto the grantee all that certain lot situated in Volusia County, Florida, as well as all their legal and equitable interest in the notes, claims conveying, deliver, granting, and transferring all their legal right, title, and equitable interest in the hereinafter-described land or real estate, situated, lying and being located in Volusia County, and obligations which they granted or contractually agreed to with any party arising from and associated with the following described land or real estate (being a lot), situated in Volusia County, Florida:

ALL OF LOT 32 AND LOT 33, AND LOT 31 EXCEPT THE NORTHERLY 24 FEET, BLOCK 11, SECTION "B", RIO VISTA, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 6, PAGE 150, OF THE PUBLIC RECORDS OF VOLUSIA COUNTY, FLORIDA.

And said grantors, assignors, transferors, do hereby fully quit and abandon unto Charles Edward Lincoln III, all of his and her claim in any legal or equitable interest in said land or real estate (being a lot), to said land or real estate, as well as their claims to any note, claims, or obligations which he and she, together, granted or contractually agreed to with respect to any party to Charles Edward Lincoln III, to have and to hold, from this day forward, without limitation or qualification whatsoever.

In witness whereof, grantor, assignor and transferor have set unto the two grantor's hand and seal the day of the above-and-foregoing warranty deed, to wit ___5___, June _____ 2008.

Signed, sealed and delivered in our presence:

GRANTOR, Susy Kuder
4 Via Corbina, Rancho Santa Margarita
Orange County, California, 92688

GRANTOR, Hal Kuder Jr.

1st Witness Mónica Parra Alvarez

Carmen Franco

2nd Witness
CARMEN FRANCO

ACCEPTED, Charles Edward Lincoln III

**_Assignment and Associated Rights in Notes and Obligations_**

On this the ___5___ day of June, 2008, Hal Kuder Jr., grantor, assignor, transferor, a single man, in conjunction with his Trustee Susy Kuder, a single woman, formerly married to but now legally divorced from Hal Kuder Jr., executed this Assignment of Rights to grantee Charles Edward Lincoln III, for the purpose of executing this warranty, and thereby California wherefore

       Witnesseth, that said grantors, assignors, transferors, Hal Kuder Jr. and Susy Kuder for and in consideration of the sum of $10.00 (ten and no/100 dollars) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt of which is hereby acknowledged, has granted (and did on June ___5___ 2008, originally sell) unto Charles Edward Lincoln III, and hereby confirms unto the grantee all that certain lot situated in Volusia County, Florida, as well as all their legal and equitable interest in the notes, claims conveying, deliver, granting, and transferring all their legal right, title, and equitable interest in the hereinafter-described land or real estate, situated, lying and being located in Volusia County, and obligations which they granted or contractually agreed to with any party arising from and associated with the following described land or real estate (being a lot), situated in Volusia County, Florida:

ALL OF LOT 32 AND LOT 33, AND LOT 31 EXCEPT THE NORTHERLY 24 FEET, BLOCK 11, SECTION "B", RIO VISTA, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 6, PAGE 150, OF THE PUBLIC RECORDS OF VOLUSIA COUNTY, FLORIDA.

And said grantors, assignors, transferors, do hereby fully quit and abandon unto Charles Edward Lincoln III, all of his and her claim in any legal or equitable interest in said land or real estate (being a lot), to said land or real estate, as well as their claims to any note, claims, or obligations which he and she, together, granted or contractually agreed to with respect to any party to Charles Edward Lincoln III, to have and to hold, from this day forward, without limitation or qualification whatsoever.

       In witness whereof, grantor, assignor and transferor have set unto the two grantor's hand and seal the day of the above-and-foregoing warranty deed, to wit ___5___ June ____ 2008.

Signed, sealed and delivered in our presence:

GRANTOR, Susy Kuder
4 Via Corbina, Rancho Santa Margarita
Orange County, California, 92688

1st Witness Monica Parra Alvarez

Carmen Franco
2nd Witness
CARMEN FRANCO

GRANTOR, Hal Kuder Jr.

ACCEPTED, Charles Edward Lincoln III

RECORDING REQUESTED BY:
MAIL TAX STATEMENTS TO:
CHARLES LINCOLN III
C/O PEYTON FREIMAN
300 EAST RIVERSIDE DRIVE #132
AUSTIN, TEXAS, 78704

## WARRANTY DEED

Property address: 1632 Espanola Avenue Holly Hill, Florida, 32177

Transfer Tax: 70 cents as it is being gifted

On this the 5 day of June, 2008, the KUDER FL FAMILY TRUST by way of its Trustee, Susy Kuder, a single woman, did execute this deed, for valuable consideration, receipt of which is hereby acknowledged, conveying, delivering, granting and transferring all the legal right, title, and equitable interest, without division or reservation, to Charles Edward Lincoln III, a resident of the state of Florida, with mailing address 325 Moorings Cove Drive, Tarpon Springs, Florida, 34689, in the following described land, situated, lying, and being located in Volusia County, Florida, to wit:

ALL OF LOT 32 AND LOT 33, AND LOT 31 EXCEPT THE NORTHERLY 24 FEET, BLOCK 11, SECTION "B", RIO VISTA, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 6, PAGE 150, OF THE PUBLIC RECORDS OF VOLUSIA COUNTY, FLORIDA.

This conveyance is made without warranty or stipulation as to any material fact or legal condition of the property, except that the Grantor, KUDER FL FAMILY TRUST by and through its Trustee, Susy Kuder has delivered all original records concerning this property to her aforementioned grantee.

Signed and executed in Orange County, California on this the 5 day of June, 2008, for ten dollars in hand and other valuable consideration.

In witness whereof, Grantor has hereunto set Grantor's hand and seal on this 5 day of June, 2008. Signed, sealed, and delivered in our presence:

_Karen Harvey_

1st Witness

_Susy Kuder trustee_

**GRANTOR, KUDER FL FAMILY TRUST**
**Susy Kuder, Trustee**

_Mario Karacuchansky_

2nd Witness

### NOTARY'S JURAT

State of California County of CALIFORNIA  Subscribed and sworn to (or affirmed) before me on this 5 day of June, 2008, by Susy Kuder, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _Sara Karacuschandy_                (seal)

Printed Name: SARA KARACUSCHANSKY

My Commission Expires: 1-19-2008

SARA KARACUSCHANSKY
Commission # 1537394
Notary Public - California
Orange County
My Comm. Expires Jan 19, 2009

  

# Fax Transmittal

**Canyon County Clerk/Auditor/Recorder**
**1115 Albany Street**
**Caldwell, Idaho 83605**

**Phone (208) 454-7555**
**Fax (208) 454-6689**

**Date:** _1 - 14 -09_

**Company:** _____

**Attn:** _Peyton_

**Fax #:** _512-476-2371_

**Page** _1_ **of** _5_ (including cover page)

**Message:** _____

_____

_____

_____

**From the desk of:** _____  **Phone #:** _____



RECORDING REQUESTED BY:
MAIL TAX STATEMENTS TO:
CHARLES LINCOLN III
C/O PEYTON FREIMAN
300 EAST RIVERSIDE DRIVE #132
AUSTIN, TEXAS, 78704

**WARRANTY DEED**

Property address: 402 Andrew Court, Caldwell, Idaho 83605

On this the 5 day of June, 2008, the KUDER 402 FAMILY TRUST by and through its Trustee Susy Kuder, a single woman, did execute this deed, for valuable consideration, receipt of which is hereby acknowledged, conveying, delivering, granting and transferring all her legal right, title, and equitable interest, without division or reservation, to Charles Edward Lincoln III, a resident of the state of Florida, with mailing address 325 Moorings Cove Drive, Tarpon Springs, Florida, 34689, in the following described land, situated, lying, and being located in Canyon County, Idaho, to wit:

LOT 18, BLOCK 1, AUGUSTINA SUBDIVISION, CALDWELL, CANYON COUNTY, IDAHO, ACCORDING TO THE PLAT FILED IN BOOK 23 OF PLATS, PAGE 38, RECORDS OF SAID COUNTY.

This conveyance is made without warranty or stipulation as to any material fact or legal condition of the property, except that the Grantor, KUDER 402 FAMILY TRUST by and through its Trustee, Susy Kuder has delivered all original records concerning this property to her aforementioned grantee.

Signed and executed in Orange County, California, on this the 5 day of June, 2008, for ten dollars in hand and other valuable consideration.

In witness whereof, Grantor has hereunto set Grantor's hand and seal on this 5 day of June, 2008. Signed, sealed, and delivered in your presence:

*Susy Kuder* +trustee

GRANTOR, 402 FAMILY TRUST

Susy Kuder, Trustee

**NOTARY'S JURAT**

State of California County of ORANGE _____ Subscribed and sworn to (or affirmed) before me on this 5 day of June _____, 20 08 by Susy Kuder _____, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

(seal)

Signature *Sara Karacuschansky*

Printed Name: SARA KRACUSCHANSKY

My Commission Expires: 1-19-2009



SARA KARACUSCHANSKY
Commission # 1537394
Notary Public - California
Orange County
My Comm. Expires Jan 19, 2009

## *Assignment and Associated Rights in Notes and Obligations*

On this the 5th day of June, 2008, Hal Kuder Jr., grantor, assignor, transferor, a single man, in conjunction with his Trustee Susy Kuder, a single woman, formerly married to but now legally divorced from Hal Kuder Jr., executed this Assignment of Rights to grantee Charles Edward Lincoln III, for the purpose of executing this warranty, and thereby California wherefore

Witnesseth, that said grantors, assignors, transferors, Hal Kuder Jr. and Susy Kuder for and in consideration of the sum of $10.00 (ten and no/100 dollars) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt of which is hereby acknowledged, has granted (and did on June 5th, 2008, originally sell) unto Charles Edward Lincoln III, and hereby confirms unto the grantee all that certain lot situated in Canyon County, Idaho, as well as all their legal and equitable interest in the notes, claims conveying, deliver, granting, and transferring all their legal right, title, and equitable interest in the hereinafter-described land or real estate, situated, lying and being located in Canyon County, and obligations which they granted or contractually agreed to with any party arising from and associated with the following described land or real estate (being a lot), situated in Canyon County, Idaho:

LOT 18, BLOCK 1, AUGUSTINA SUBDIVISION, CALDWELL, CANYON COUNTY, IDAHO, ACCORDING TO THE PLAT FILED IN BOOK 23 OF PLATS, PAGE 38, RECORDS OF SAID COUNTY.

And said grantors, assignors, transferors, do hereby fully quit and abandon unto Charles Edward Lincoln III, all of his and her claim in any legal or equitable interest in said land or real estate (being a lot), to said land or real estate, as well as their claims to any note, claims, or obligations which he and she, together, granted or contractually agreed to with respect to any party to Charles Edward Lincoln III, to have and to hold, from this day forward, without limitation or qualification whatsoever.

In witness whereof, grantor, assignor and transferor have set unto the two grantor's hand and seal the day of the above-and-foregoing quite claim deed, to wit 5th June ____ 2008.

Signed, sealed and delivered in our presence:

_Susy Kuder_ (signature)
GRANTOR, Susy Kuder
4 Via Corbina, Rancho Santa Margarita
Orange County, California, 92688

GRANTOR, Hal Kuder Jr. (signature)

(signature)
1st Witness Mónica Parra Alvarez

Carmen Franco (signature)
2nd Witness
CARMEN FRANCO

(signature)
ACCEPTED, Charles Edward Lincoln III

JAN-14-2009 05:35P FROM:CANYON COUNTY RECORD 2084546689 TO:9151247833711



200900 1833

RECORDING REQUESTED BY:
MAIL TAX STATEMENTS TO:
CHARLES LINCOLN III
C/O PEYTON FREIMAN
300 EAST RIVERSIDE DRIVE #132
AUSTIN, TEXAS, 78704

## WARRANTY DEED

**Property address: 404 Andrew Court, Caldwell, Idaho 83605**

On this the **5** day of June, 2008, the KUDER 404 FAMILY TRUST by and through its Trustee, Susy Kuder, a single woman, did execute this deed, for valuable consideration, receipt of which is hereby acknowledged, conveying, delivering, granting and transferring all the legal right, title, and equitable interest, without division or reservation, to Charles Edward Lincoln III, a resident of the state of Florida, with mailing address 325 Moorings Cove Drive, Tarpon Springs, Florida, 34689, in the following described land, situated, lying, and being located in Canyon County, Idaho, to wit:

LOT 17, BLOCK 1, AUGUSTINA SUBDIVISION, CALDWELL, CANYON COUNTY, IDAHO, ACCORDING TO THE PLAT THEREOF, FILED IN BOOK 23 OF PLATS, PAGE 38, RECORDS OF SAID COUNTY.

This conveyance is made without warranty or stipulation as to any material fact or legal condition of the property, except that the Grantor, KUDER 404 FAMILY TRUST by and through its Trustee, Susy Kuder, has delivered all original records concerning this property to her aforementioned grantee.

Signed and executed in Orange County, California, on this the **5** day of June, 2008, for ten dollars in hand and other valuable consideration.

In witness whereof, Grantor has hereunto set Grantor's hand and seal on this **5** day of June, 2008. Signed, sealed, and delivered in your presence:

_Susy Kuder trustee_

**GRANTOR, KUDER 404 FAIMLY TRUST**
Susy Kuder, Trustee

### NOTARY'S JURAT

State of California County of **ORANGE** Subscribed and sworn to (or affirmed) before me on this **5** day of **June**, 20**08**, by **Susy Kuder**, proved to me on the basis of satisfactory evidence to be the person(X) who appeared before me.

Signature _Sara Karacuschansky_ (seal)

Printed Name: **SARA KARACUSCHANSKY**

My Commission Expires: **1-19-2009**

SARA KARACUSCHANSKY
Commission # 1537394
Notary Public - California
Orange County
My Comm. Expires Jan 19, 2009

JHN-14-2009 05:36P FROM:CANYON COUNTY RECORD 2084546698 TO:9151347683? Page ID #:?

Case 8:08-cv-01334-DOC-E Document 14 Filed 04/17/09 Page 38 of 88 Page ID #:195

### Assignment and Associated Rights in Notes and Obligations

On this the 5th day of June, 2008, Hal Kuder Jr., grantor, assignor, transferor, a single man, in conjunction with his Trustee Susy Kuder, a single woman, formerly married to but now legally divorced from Hal Kuder Jr., executed this Assignment of Rights to grantee Charles Edward Lincoln III, for the purpose of executing this warranty, and thereby California wherefore

Witnesseth, that said grantors, assignors, transferors, Hal Kuder Jr. and Susy Kuder for and in consideration of the sum of $10.00 (ten and no/100 dollars) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt of which is hereby acknowledged, has granted (and did on June 5th 2008, originally sell) unto Charles Edward Lincoln III, and hereby confirms unto the grantee all that certain lot situated in Canyon County, Idaho, as well as all their legal and equitable interest in the notes, claims conveying, deliver, granting, and transferring all their legal right, title, and equitable interest in the hereinafter-described land or real estate, situated, lying and being located in Canyon County, and obligations which they granted or contractually agreed to with any party arising from and associated with the following described land or real estate (being a lot), situated in Canyon County, Idaho:

LOT 17, BLOCK 1, AUGUSTINA SUBDIVISION, CALDWELL, CANYON COUNTY, IDAHO, ACCORDING TO THE PLAT THEREOF, FILED IN BOOK 23 OF PLATS, PAGE 38, RECORDS OF SAID COUNTY.

And said grantors, assignors, transferors, do hereby fully quit and abandon unto Charles Edward Lincoln III, all of his and her claim in any legal or equitable interest in said land or real estate (being a lot), to said land or real estate, as well as their claims to any note, claims, or obligations which he and she, together, granted or contractually agreed to with respect to any party to Charles Edward Lincoln III, to have and to hold, from this day forward, without limitation or qualification whatsoever.

In witness whereof, grantor, assignor and transferor have set unto the two grantor's hand and seal the day of the above-and-foregoing quite claim deed, to wit 5th June ____ 2008.

Signed, sealed and delivered in our presence:

_Susy Kuder_

GRANTOR, Susy Kuder
4 Via Corbina, Rancho Santa Margarita
Orange County, California, 92688

_signature_

1st Witness Mónica Tassa Álvarez

_Carmen Franco_

2nd Witness
CARMEN FRANCO

GRANTOR, Hal Kuder Jr.

ACCEPTED, Charles Edward Lincoln III

## *DURABLE POWER OF ATTORNEY WITH DETAILED POWERS*

I, Hal Kuder Jr., the principal. Hereby designate and appoint, my friend CHARLES E. LINCOLN III, to be and serve as my attorney-in-fact and agent (subsequently called my agent) in my name and for my benefits.

SUBSTITUTE AGENT. If my friend, CHARLES E. LINCOLN III, ceases to act as my agent due to his death, incapacity or resignation, I retain the right to a substitute agent, with 30 days written notice to all directly and indirectly involved parties who may have relied on his actions as power of attorney prior to this substitution.

1. GENERAL GRANT OF POWER. I grant to my agent full power and authority to do everything necessary in exercising any of the powers granted as fully as I might or could do if personally present, with full power of substitution or revocation, hereby ratifying and confirming all that my agent shall lawfully do or cause to be done by virtue of this power of attorney and the powers herein granted. I grant to my agent full power and authority to exercise or perform any act, power, duty right obligation whatsoever that I now have or may acquire, whether personal, tangible or intangible, now owned or hereafter acquired by me, including, without limitation, the following specifically enumerated powers:

(a) POWERS OF COLLECTION OF PAYMENT. To forgive, request, demand, sue for, recover, collect, receive, hold all such sums of money, debts, dues commercial paper, checks, drafts, accounts, certificates, bonds, dividends, certificates of deposit, annuities, pension, profit sharing, retirement, social security, insurance and other contractual benefits and proceeds, all documents of title, all property, real or personal, tangible or intangible property and property rights, and demands whatsoever, liquidated or unliquidated, now or hereafter owned by, or due, owing, payable or belonging to me or in which I have or may hereafter acquire an interest; to have, use and take all lawful means and equitable legal remedies and proceedings in my name for the collection and recover thereof, and to adjust, sell, compromise, and agree for the same and to execute and deliver for me, on my behalf, and in my name, all endorsements, release, receipts, or other sufficient discharges for the same; and power to sell homestead;

(b) POWER TO ACQUIRE AND SELL. To acquire, purchase, exchange, grant options to sell, and sell and convey real or personal property, tangible or intangible, or interests therein, on such terms and conditions as my agent shall deem proper;

(c) MANAGEMENT POWERS. To maintain, repair, improve, invest, manage, insure, rent, lease, encumber, and in any manner deal with any real or personal property, tangible, or intangible, or any interest therein, that I now own or may hereinafter acquire, in my name and for my benefit, upon such terms and conditions as my agent shall deem proper;

(d) BANKING POWERS. To make, receive and endorse checks and drafts, deposit and withdraw funds, acquire and redeem certificates of deposit, in banks, savings and loan associations and other institutions, execute or release such deeds of trust or other security agreements as may be necessary or proper in the exercise of the rights and powers herein granted;

(e) BUSINESS INTERESTS. To conduct or participate in any lawful business of whatever nature for me and in my name; execute partnership, agreements and amendments thereto; incorporate, reorganize, merge, consolidate, recapitalize, sell, liquidate, or dissolve any business; elect or employ officers, directors and agents; carry out the provisions of any agreement for the sale of any business interest or the stock therein; and exercise voting rights with respect to stock, either in person or by proxy, and exercise stock options;

Hal Kuder Jr.'s June 6, 2008, appointment of Charles Edward Lincoln III as attorney in fact and agent with durable power

Page 1 of 3   Initials ___

(f) TAX POWERS. To prepare, sign and file joint or separate income tax returns or declarations of estimated tax for any year or years; to prepare, sign and file gift tax returns with respect to gifts made by me for any year or years; to consent to any gift and to utilize any gift-splitting provisions or other tax election; and to prepare, sign and file any claims for refunds of any tax;

(g) POWER TO CREATE, FUND, AMEND AND TERMINATE TRUSTS. To execute a revocable trust agreement with such trustee or trustees as my Agent shall select which shall provide that all income and principal shall be paid to me, to some person for my benefit or applied for my benefit in such amounts as I or my Agent shall request or as the trustee or trustees shall determine, and that on my death any remaining income and principal shall be paid to my personal representative, and that the trust may be revoked or amended by me or my agent at any time and from time to time; provided, however, that any amendment by my Agent must be such that by law or under the provisions of this instrument such amendment could have been included in the original trust agreement; to deliver and convey any or all of the assets to the trustee or trustees thereof; to add any or all of my assets to such a trust already in existence at the time of the creation of this instrument or created by me at any time thereafter;

(h) POWER TO DISCLAIM, RENOUNCE, RELEASE OR ABANDON PROPERTY INTESESTS. To renounce and disclaim any property or interest in property or powers to which for any reason and by any means I may become entitled, whether by gift, testate or intestate succession; to release or abandon any property or interest in property or powers which I may now hereafter own, including any interests in or rights over trusts (including the right to alter, amend, revoke or terminate) and to exercise any right to claim an elective share in any estate or under any will, and in exercising such discretion, my Agent may take into account such matters as shall include but not be limited to any reduction in estate or inheritance taxes on my estate, and the effect of such renunciation or disclaimer upon persons interested in my estate and persona who would receive the renounced or disclaimed property;

(j) POWER TO MAKE GIFTS. To make gifts, grants or other transfers without consideration either outright or in trust (including the forgiveness of indebtedness and the completion of any charitable pledges I may have made) to such person or organization as my Agent shall select;

(k) POWER TO NOMINATE CONSERVATOR OR GUARDIAN. To nominate and/or petition for the appointment of my Agent or any person my Agent deems appropriate as primary, successor or alternate guardian, guardian ad litem or conservator or to any fiduciary office (all of such offices of guardian, et al. being hereinafter referred to as "Personal Representative" ) representing me or any interest of mine or any person for whom I may have a right or duty to nominate or petition for such appointment; to grant to any such Personal Representative all of the powers under applicable law that I am permitted to grant; to waive any bond requirement for such Personal Representative that I am permitted by law to waive.

(l) POWER TO ASSERT CLAIMS, TO FILE LAWSUITS and TO LITIGATE: By separate instrument, Hal Kuder Jr. has deeded, granted, and transferred certain interests, claims, and titles to Charles Edward Lincoln III.

(m)  Charles Edward Lincoln III shall have all the same right to assert all claims assigned to him by Hal Kuder Jr., and to make demands, file litigating, and institute all proceedings on behalf of Hal Kuder Jr. which Hal Kuder Jr. could lawfully make on behalf of himself, including claims for personal injury, fraud, and loss of beneficial interest in insurance policies or trusts previously executed.  Although the law of the State of California is the primary source of law governing this trust, Hal Kuder Jr. specifically adopts §§499-501 of the Texas Probate Code and grants to Charles Edward Lincoln III all powers to make claims or litigate on his behalf included therein.

2. INTERPRETATION AND GOVERNING LAW. This instrument is to be construed and interpreted as a general durable power of attorney. The enumeration of specific powers is not interested to, nor does it,

limit or restrict the general powers herein granted to my agent. This instrument is executed and delivered in the state of California, and the laws of the state of California shall govern all questions as to the validity of this power and the construction of its provisions.

3. THIRD PARTY RELIANCE. Third parties may rely upon the representations of my agents as to all matters to any power granted to my agent, and no person who may act in reliance upon the representation of my agent or the authority granted to my agent shall incur any liability to me or my estate as a result of permitting my agent to exercise any power.

4. DISABILITY OF PRINCIPAL. This General Power of Attorney shall not be affected by my subsequent disability or incompetence.

IN WITNESS WHEREOF, I have executed this General Durable Power of Attorney and I have directed that photographic copies of this power shall have the same force and affect as an original.

_____
Hal Kuder Jr.

TWO WITNESSES, competent and adult individuals of full legal capacity:

Attested and subscribed in the presence of the principal and subsequent to the principal subscribing the same, by their signatures and acknowledgements:

Printed name: SARA KARACUSCHANSKY    Printed name: KAREN HARVEY

County of Residence: ORANGE    County of Residence: ORANGE

State of Residence: CALIFORNIA    State of Residence: CALIFORNIA

NOTARY'S JURAT

State of California County of Orange. Subscribed and sworn to (or affirmed) before me on this ____ day of June, A.D. 2008, by Hal Kuder Jr., proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me together with two adult witnesses who also signed above and in my presence.

Signature _Elizabeth Karacuschansky_    (seal)

Printed Name: _Elizabeth Karacuschansky_

My Commission Expires: 1-19-09

ELIZABETH KARACUSCHANSKY
Commission # 1537393
Notary Public - California
Orange County
My Comm. Expires Jan 19, 2009

Hal Kuder Jr.'s June 6, 2008, appointment of Charles Edward Lincoln III as attorney in fact and agent with durable power
Page 3 of 3   Initials

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B:
## August 6, 2008
## Letter to Wells Fargo
## Re: 4 Via Corbina
## Rancho Santa Margarita
## (Second Demand Letter)

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*

- 23 -

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

# *Charles Edward Lincoln*
## *16 Trowbridge Street, #12, Cambridge, MA 02138*

*August 6, 2008*
*Wednesday*

Wells Fargo Bank, N.A., successor by merger to
Wells Fargo Home Mortgage, Inc.,
First American Title Co., as Agent for
Cal-Western Reconveyance Corp.
525 East Main Street
El Cajon, California 92022-9004

Special Attention: JUANA TOBIAS, CAL-WESTERN RECONVEYANCE CORPORATION

Dear Ms. Juana Tobias, or to whom it may concern:

Hal Kuder forwarded me your July 14, 2008 Notice of Default and Election to sell under Deed of Trust with Notice of Default electronically recorded on July 15, 2008, supplemented by an unsigned letter from Cal Western Reconveyance Corp. dated July 24, 2008 (Exhibit A to this letter).

As I have previously notified Wells Fargo employees and agents, on June 5, 2008, I acquired all of Hal Kuder's Right, Title, and Interest in the property subject of your attached notices, located at 4 Via Corbina in Rancho Santa Margarita, as well as in the note he granted to Wells Fargo on or about July 2, 2003 (Exhibit B to this letter).

Hal Kuder no longer resides in the United States, but before leaving he also gave me a power of attorney (agent & attorney in fact) to act on his behalf, if necessary, in regard to any issues relating to his own personal interests or interests deemed non-transferable for any reason (Exhibit C to this letter).

I have investigated the matter, in particular the history of the note granted by Hal Kuder, and have concluded that Wells Fargo has sold Hal Kuder's note and has no residual or retained standing to collect or designate either First American Title or Cal-Western Reconveyance Corp. as an agent for collection or foreclosure.

I demand that you disclose to whom Hal Kuder's note was sold, that you give me the EDGAR number on all securitization of mortgage notes related to this transaction, and that you show me how Wells Fargo issued its 1099OID and related or similar tax forms regarding this transaction and that you provide me with authenticated copies of the documents in question.

In short, I demand that you prove your standing to foreclose to me in precisely the manner as has been required across the nation, according to precedents set in Ohio in November of last year (see Exhibit D). This case has set the "standard for proof of standing" in foreclosures and if Wells Fargo cannot prove its standing to foreclose according to the standards of this case, neither Wells Fargo nor any alleged "agent" or "trustee" has the right to foreclose.

This raises another interesting question: can EITHER Cal-Western Reconveyance Corporation OR First American show any Power of Attorney or declaration of trust comparable in formality or legal effect to the document attached here as Exhibit C from Hal & Suzy Kuder to Charles E. Lincoln

Please send all correspondence regarding 4 VIA CORBINA, RANCHO SANTA MARGARITA, CALIFORNIA 92688 to me at the above-address of 16 Trowbridge Street, #12, in Cambridge, Massachusetts 02138.

You may also communicate with me by telephone at 512-923-1889 and by e-mail at charles.e.lincoln@att.net.

In short, I demand that you prove your right to collect any debt relating to this property or else cease and desist ALL collection activities. I intend to file a complaint with the Securities and Exchange Commission (SEC) and the FTC (Federal Trade Commission) regarding the false and misleading statements made in connection with your securitization of mortgages and your attempts to collect debts by illegal and fraudulent misrepresentations of right, title, and ownership.

Thank you,

Charles Edward Lincoln, III
charles.e.lincoln@att.net
Tel.: (512) 923-1889

Copy:
Hal Kuder

Peyton Yates Freiman
600 Elmwood #6
Austin, Texas 78705

Tom Daly, Orange County Clerk-Recorder
12 Civic Center Plaza, Room 1010
Santa Ana, California 92701

# Exhibit A:
# Notice signed by Juana Tobias
# On Behalf of Cal-Western Reconveyance
# Acting as Alleged Trustee for
# Wells Fargo Bank

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**NOTICE IS HEREBY GIVEN:**

**CAL-WESTERN RECONVEYANCE CORPORATION is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary**

under a deed of trust dated June 24, 2003 executed by

**HAL KUDER JR A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY** as trustor, to secure certain obligations in favor of

**WELLS FARGO HOME MORTGAGE INC**
as beneficiary

recorded as document 2003000777126 on July 02, 2003 in book XX page XX official records in the office of County Recorder of ORANGE
County, California, describing land therein as:

**COMPLETELY DESCRIBED IN SAID DEED OF TRUST**

said obligations including a promissory note for the principal sum of $322,699.00
that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Failure to pay the monthly payment due April 1, 2008 of principal, interest and impounds and subsequent installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary pursuant to the terms and conditions of said deed of trust.

That by reason thereof the present beneficiary under such Deed of Trust has deposited with said trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

T.S. 1157181-10

Dated:       July 14, 2008          **CAL-WESTERN RECONVEYANCE CORPORATION**
                                      By: First American, As Agent

                                      Signature By _____
                                                      Juana Tobias

01/03/2007 rev.                                                   Nodca.doc Page 2 of 2



IPORTANT INFORMATION
NCLOSED

1104 1994 1410 1335 0948

July 24, 2008

Trustee Sale No. 1157181-10 1      CWR 07240858 D23
HAL KUDER JR
4 VIA CORBINA
RANCHO SANTA MARG  CA  92688

Pursuant to the requirements contained in section 2924b of the Civil Code of the State of California, we enclose a copy of a Notice of Default and Election to Sell under Deed of Trust in an envelope and with postage prepaid.

You will please observe that said Notice of Default and Election to Sell under Deed of Trust was recorded on July 15, 2008 and that this notice was mailed within the required statutory time limit.

This letter is an attempt to collect a debt and any information obtained from you will be used for that purpose.

Unless you notify us at the address on the attached notice within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, we will assume this debt is valid.  If you notice that you dispute this debt, we will obtain a verification of the debt from the lender and mail you a copy.

If you make a request to us in writing within 30 days after receiving this notice, we will provide you with the name and address of the original creditor.

If you are in any branch of the U.S. Reserve Armed Forces and have been called to active duty, please forward a copy of your orders to our office.

Thank you.

CAL-WESTERN RECONVEYANCE CORPORATION

Enclosure

Rev. 10/30/01

nodmtca

**First American Title Co.**

This Document was electronically recorded by
Lenders Advantage B

Recording Requested By
When Recorded Mail To

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

Cal-Western Reconveyance Corp.
P.O. Box 22004
525 East Main Street
El Cajon  CA  92022-9004

|||||||||||||||||| 9.00
2008000338268 04:24pm 07/15/08

213 8 N15 2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

Trustee Sale No. 1157181-10
3807620

Space Above This Line For Recorder's Use

Loan No. XXXXXX3034 Ref: KUDER JR, HAL

# NOTICE OF DEFAULT

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice). This amount is $7,514.13 as of July 14, 2008, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**WELLS FARGO BANK N.A. SUCCESSOR BY MERGER TO WELLS FARGO HOME MORTGAGE INC**
C/O Cal-Western Reconveyance Corporation
P.O. Box 22004
525 East Main Street
El Cajon  CA  92022-9004
(619)590-9200

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Page 1 of 2

**First American Title Co.**

Recording Requested By
When Recorded Mail To

This Document was electronically recorded by
Lenders Advantage B

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

Cal-Western Reconveyance Corp.
P.O. Box 22004
525 East Main Street
El Cajon  CA  92022-9004

9.00
2008000338268 04:24pm 07/15/08

213 8 N15 2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

Trustee Sale No. 1157181-10

3807620

_____ Space Above This Line For Recorder's Use _____

Loan No. XXXXXX3034 Ref: KUDER JR, HAL

# NOTICE OF DEFAULT

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice). This amount is $7,514.13 as of July 14, 2008, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**WELLS FARGO BANK N.A. SUCCESSOR BY MERGER TO WELLS FARGO**

**HOME MORTGAGE INC**

C/O Cal-Western Reconveyance Corporation
P.O. Box 22004
525 East Main Street
El Cajon  CA  92022-9004
(619)590-9200

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.**

# Exhibit B:
# Conveyance of Property by
# Warranty Deed and
# Assignment of Associated Rights
# In Notes & Obligations
# Signed by Hal & Suzy Kuder

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# *EXHIBIT C:*
## *Volusia County*
## *Wells Fargo Complaint for*
## *Foreclosure*
## *2008-33187-CICI*
## *Judge Richard S. Graham*
## *September 9, 2008*

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*

- 24 -

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*

## IN THE CIRCUIT/COUNTY COURT IN AND FOR VOLUSIA COUNTY, FLORIDA

**Judge** : Richard S. Graham - Div. 31
**Case No** : 2008 33187 CICI

WELLS FARGO BANK, N.A.     -vs-     MICHAEL D. HARRIS, ETC., ET AL
**Plaintiff(s),**                                    **Defendant(s).**

### SUMMONS

### THE STATE OF FLORIDA:
### TO EACH SHERIFF OF THE STATE:

YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint or petition in the above styled cause upon the defendant(s):

TENANT #1
1632 ESPANOLA AVENUE
HOLLY HILL, FL 32117

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the Clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken, without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's attorney" named below:

LINDSEY DIEHL
FLORIDA DEFAULT LAW GROUP P L
P O BOX 25018
TAMPA, FL 33622-5018

DATED : September 9, 2008

                                 **DIANE M. MATOUSEK**
                                 **CLERK OF CIRCUIT/COURT**

d to proc serv(Max)@ctr for sop

                                 **By : T Baker, Deputy Clerk**      (seal)

-0374-8908                      (See reverse side for Spanish and French portion.)

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT
IN AND FOR VOLUSIA COUNTY, FLORIDA
CIVIL ACTION

WELLS FARGO BANK, NA,
    Plaintiff(s),

                                   CASE NO.

vs.

MICHAEL D. HARRIS, AS TRUSTEE OF THE KUDER FL FAMILY TRUST, et al,
    Defendant(s).

————————————————————/

SUMMONS
PERSONAL SERVICE ON A NATURAL PERSON

|  | MILITARY |
|---|---|
| | YES_____ NO_____ |
| | MOBILE HOME |
| | YES_____ NO_____ |
| VIN # | |
| | CONTINUOUS MARRIAGE |
| | YES_____ NO_____ |

THE STATE OF FLORIDA:
TO EACH SHERIFF OF THE STATE:

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint and Notice of Lis Pendens in this lawsuit upon the below-named Defendant:

TENANT #1
1632 ESPANOLA AVENUE
HOLLY HILL, FL 32117

IMPORTANT

    A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint in this Court. A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

    If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a carbon copy or photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

PLAINTIFF/PLAINTIFF'S ATTORNEY:

    Lindsey Diehl, Esquire
    Florida Default Law Group, P.L.
    9119 Corporate Lake Drive, 3rd Floor
    Tampa, Florida 33634
    (813) 251-4766

DATED on_____, 2008 .
                Clerk of Circuit Court

                By: _____

Summons (3/89) #51            Deputy Clerk
NMNC-SPECFHLMC-R-cjayska
* See Attachment for Spanish and French translation.
* See Attachment for Americans with Disabilities Act.
PROVEST

# FREDDIE-MAC

F08072792

## IMPORTANT

ATTENTION: PERSONS WITH DISABILITIES
If you are a person with disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Court Administrator at Suite 300, Courthouse Annex, 125 E Orange Ave., Daytona Beach, FL 32114; Tel: 386-257-6096 within two (2) working days of the receipt of this Notice; if you are hearing or voice impaired, Call 1-800-955-8771; THIS IS NOT A COURT INFORMATION LINE.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes, interesadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandate o Abogado del Demanadante).

## IMPORTANT

Des poursuites judiciaires ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un advocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

IN THE CIRCUIT COURT OF THE SEVENTH
JUDICIAL CIRCUIT IN AND FOR VOLUSIA COUNTY, FLORIDA
CIVIL ACTION

WELLS FARGO BANK, NA,
  Plaintiff,

vs.

CASE NO.
DIVISION

SPACE FOR RECORDING ONLY F.S.§695.26

MICHAEL D. HARRIS, AS TRUSTEE OF THE KUDER FL FAMILY TRUST; THE UNKNOWN
BENEFICIARIES OF KUDER FL FAMILY TRUST; HAL KUDER JR; THE UNKNOWN SPOUSE OF
HAL KUDER JR; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND
AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE
DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES,
HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; TENANT #1, TENANT #2, TENANT #3,
TENANT #4, TENANT #5, TENANT #6, TENANT #7, and TENANT #8 the names being fictitious to
account for parties in possession
  Defendant(s).

NOTICE OF LIS PENDENS

To the above-named Defendant(s) and all others whom it may concern:

You are notified of the institution of this action by the above-named Plaintiff, against you seeking to foreclose a

mortgage recorded in Official Records Book 5492, Page 2702, on the following property in VOLUSIA County, Florida:

ALL OF LOT 32 AND LOT 33, AND LOT 31, EXCEPT THE NORTHERLY 24 FEET, BLOCK 11,
SECTION B, RIO VISTA, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN
PLAT BOOK 6, PAGE 150, OF THE PUBLIC RECORDS OF VOLUSIA COUNTY FLORIDA.

Dated this 2 day of September, 2008.

Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
(813) 251-4766
By: 
Lindsey Diehl
Florida Bar No. 27688
Colleen E. Lehmann
Florida Bar No. 33496
Christina N. Riley
Florida Bar No. 46836

NMNC-SPECFHLMC-R-ejayska

FILE_NUMBER: F08072792

DOC_ID: M000105

## IN THE CIRCUIT COURT OF THE SEVENTH
### JUDICIAL CIRCUIT IN AND FOR VOLUSIA COUNTY, FLORIDA
### CIVIL ACTION

WELLS FARGO BANK, NA,
    **Plaintiff,**

vs.                                                      **CASE NO.**
                                                          **DIVISION**

MICHAEL D. HARRIS, AS TRUSTEE OF THE KUDER FL FAMILY TRUST;  THE UNKNOWN
BENEFICIARIES OF KUDER FL FAMILY TRUST;  HAL KUDER JR;  THE UNKNOWN SPOUSE OF
HAL KUDER JR ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND
AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE
DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES,
HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS;  TENANT #1, TENANT #2, TENANT #3,
TENANT #4, TENANT #5, TENANT #6,  TENANT #7, and  TENANT #8 the names being fictitious to
account for parties in possession
        **Defendant(s).**

_____/

## MORTGAGE FORECLOSURE COMPLAINT

Plaintiff, WELLS FARGO BANK, NA, sues Defendants,   MICHAEL D. HARRIS, AS TRUSTEE OF
THE KUDER FL FAMILY TRUST,  THE UNKNOWN BENEFICIARIES OF KUDER FL FAMILY TRUST,
HAL KUDER JR,  THE UNKNOWN SPOUSE OF HAL KUDER JR; ANY AND ALL UNKNOWN PARTIES
CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL
DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN
PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER
CLAIMANTS;   TENANT #1,  TENANT #2,  TENANT #3,  TENANT #4,  TENANT #5,  TENANT #6,
TENANT #7 and  TENANT #8 the names being fictitious to account for parties in possession, and alleges:

### COUNT I - MORTGAGE FORECLOSURE

1.    This is an in rem action to foreclose a mortgage on real property located and situated in VOLUSIA
County, Florida.

2.    This firm has complied with the notice requirement of the Fair Debt Collection Practices Act, 15
U.S.C. § 1692, et seq, as amended.  The Notice(s) previously mailed by the firm is attached hereto and incorporated
herein as an Exhibit.

FILE_NUMBER: F08072792



DOC_ID: M000100



3.       On February 11, 2005, there was executed and delivered a Promissory Note ("Mortgage Note") and a Purchase Money Mortgage ("Mortgage") securing the payment of the Mortgage Note. The Mortgage was recorded on February 15, 2005, in Official Records Book 5492 at Page 2702, of the Public Records of VOLUSIA County, Florida, (All subsequent recording references are to the public records of VOLUSIA County, Florida) and mortgaged the real and personal property ("Property") described therein, then owned by and in possession of the Mortgagor(s). Copies of the original Mortgage Note and Mortgage are attached hereto and incorporated herein as an Exhibit.

4.       Plaintiff is now the holder of the Mortgage Note and Mortgage and/or is entitled to enforce the Mortgage Note and Mortgage.

5.       The Property is now owned of record by Defendant(s), MICHAEL D. HARRIS, AS TRUSTEE OF THE KUDER FL FAMILY TRUST.

6.       The Mortgage Note and Mortgage are in default. The required installment payment of May 1, 2008, was not paid, and no subsequent payments have been made. The Mortgage is contractually due for the May 1, 2008, payment. The last payment received was applied to the April 1, 2008, installment, and no subsequent payments have been applied to the loan.

7.       Plaintiff declares the full amount payable under the Mortgage Note and Mortgage to be now due.

8.       Plaintiff must be paid $185,327.27 in principal on the Mortgage Note and Mortgage, together with interest from April 1, 2008, late charges, and all costs of collection including title search expenses for ascertaining necessary parties to this action and reasonable attorney's fees.

9.       All conditions precedent to the acceleration of the Mortgage Note and foreclosure of the Mortgage have been performed or have occurred.

10.       Plaintiff has retained the law firm of Florida Default Law Group, P.L., in this action and is obligated to pay it a reasonable fee for its services in bringing this action as well as all costs of collection.

11.       The interests of each Defendant are subject, subordinate, and inferior to the right, title, interest, and lien of Plaintiff's Mortgage with the exception of any special assessments that are superior pursuant to Florida Statutes §159 (2006) and Florida Statutes §170.09 (2006).

12.       THE UNKNOWN BENEFICIARIES OF KUDER FL FAMILY TRUST may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of that certain trust agreement, or may otherwise claim an interest in the Property.

13.       HAL KUDER JR may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of possible defects in that certain Quit Claim Deed recorded in Official Records Book 5856 Page 4923 relating to the lack of the required marital status and/or caption reciting homestead status of the grantor, if married; possible defects in that certain Quit Claim Deed recorded in Official Records Book 5930 Page 2526 relating to the lack of the required marital status and/or caption reciting homestead status of the grantor, if married; execution of that mortgage recorded in Official Records Book 5492 Page 2702, or may otherwise claim an interest in the Property.

2

14. THE UNKNOWN SPOUSE OF HAL KUDER JR may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of homestead rights, possession, or any right of redemption, or may otherwise claim an interest in the Property.

15. TENANT #1, TENANT #2, TENANT #3, TENANT #4, TENANT #5, TENANT #6, TENANT #7 and TENANT #8, the names being fictitious to account for parties in possession may claim some interest in the Property that is the subject of this foreclosure action by virtue of an unrecorded lease or purchase option, by virtue of possession, or may otherwise claim an interest in the Property. The names of these Defendants are unknown to the Plaintiff.

WHEREFORE, Plaintiff requests that the Court ascertain the amount due Plaintiff for principal and interest on the Mortgage Note and Mortgage and for late charges, abstracting, taxes, expenses and costs, including attorney's fees, plus interest thereon; that if the sums due Plaintiff under the Mortgage Note and Mortgage are not paid immediately, the Court foreclose the Mortgage and the Clerk of the Court sell the Property securing the indebtedness to satisfy Plaintiff's mortgage lien in accordance with the provisions of Florida Statutes §45.031 (2006); that the rights, title and interest of any Defendant, or any party claiming by, through, under or against any Defendant named herein or hereafter made a Defendant be forever barred and foreclosed; that the Court appoint a receiver of the Property and of the rents, issues, income and profits thereof, or in the alternative, order sequestration of rents, issues, income and profits pursuant to Florida Statutes §697.07 (2006); and that the Court retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession and the entry of a deficiency decree, when and if such deficiency decree shall appear proper, if borrower(s) has not been discharged in bankruptcy.

## COUNT II – RE-ESTABLISHMENT OF NOTE

16. This is an action to re-establish a lost Mortgage Note pursuant to Florida Statutes §673.3091 (2006).

17. Plaintiff incorporates by reference the allegations previous pled as fully set forth herein.

18. The Plaintiff and the Defendants named herein are the only persons known to Plaintiff to have an interest for or against the re-establishment of the Mortgage Note.

19. Plaintiff was in possession of the Mortgage Note and entitled to enforce it when loss of possession occurred or Plaintiff has been assigned the right to enforce the Mortgage Note. (See the attached true copy of the Note.)

3

20.    The terms of the Note are as follows:

    a.    Original loan amount: $ 193,200.00

    b.    Amount of monthly principal and interest payment: $1,221.16

    c.    Interest rate: 6.500%

    d.    Loan beginning date: February 11, 2005

21.    At some time between February 11, 2005, and the present, the Mortgage Note has either been lost or destroyed and the Plaintiff is unable to state the manner in which this occurred. After due and diligent search, Plaintiff has been unable to obtain possession of the Mortgage Note.

22.    The Mortgage Note has not been seized or transferred by Plaintiff.

WHEREFORE, Plaintiff requests that the Court re-establish the Mortgage Note which this Mortgage secures.

<div style="margin-left:50%">

Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
(813) 251-4766

By: _____

Lindsey Diehl
Florida Bar No. 27688
Colleen E. Lehmann
Florida Bar No. 33496
Christina N. Riley
Florida Bar No. 46836

</div>

NMNC-SPEC:FHLMC-R-cjayska

4

**FLORIDA DEFAULT LAW GROUP, P.L.**
ATTORNEYS AT LAW
9119 CORPORATE LAKE DRIVE
3RD FLOOR
TAMPA, FLORIDA 33634

Please reply to:
Post Office Box 25018
Tampa, FL 33622-5018

Telephone (813) 251-4766
Telefax (813) 251-1541

September 01, 2008

Re:

Loan Number:
Mortgage Servicer
Creditor to whom
the debt is owed:
Property Address: ,
Our File No.:

Dear Borrower:

The law firm of Florida Default Law Group, P.L. (hereinafter referred to as "law firm") has been retained to represent with regards to its interests in the promissory Note and Mortgage executed by on . Pursuant to the terms of the promissory Note and Mortgage, our client has accelerated all sums due and owing, which means that the entire principal balance and all other sums recoverable under the terms of the promissory Note and Mortgage are now due.

As of the date of this letter, the amount owed to our client is $0.00, which includes the unpaid principal balance, accrued interest through today, late charges, and other default-related costs recoverable under the terms of the promissory Note and Mortgage. Additional interest will accrue after the date of this letter.

This correspondence is being sent to comply with the Fair Debt Collection Practices Act and should not be considered a payoff letter. Our client may make advances and incur fees and expenses after the date of this letter which are recoverable under the terms of the promissory Note and Mortgage. Therefore, if you wish to receive figures to reinstate (bring your loan current) or pay off your loan through a specific date, please contact this law firm at (813) 251-4766 or client.services@defaultlawfl.com.

Unless you notify this law firm within thirty (30) days after your receipt of this letter that the validity of this debt, or any portion thereof, is disputed, this law firm will assume that the debt is valid. If you do notify this law firm in writing within thirty (30) days after receipt of this letter that the debt, or any portion thereof, is disputed, this law firm will obtain verification of the debt or a copy of the judgment against you, if any, and mail it to you. Also, upon your written request within thirty (30) days after your receipt of this letter, this law firm will provide you with the name and address of the original creditor, if different from the current creditor. Florida Default Law Group, P.L. is a debt collector. This law firm is attempting to collect a debt, and any information obtained will be used for that purpose.

All written requests should be addressed to Lindsey Diehl, Florida Default Law Group, P.L., P.O. Box 25018, Tampa, Florida 33622-5018.

This law firm is in the process of filing a Complaint on the promissory Note and Mortgage to foreclose on real estate. The advice in this letter pertains to your dealings with this law firm as a debt collector. It does not affect your dealings with the Court, and in particular, it does not change the time at which you must answer the Complaint. The Summons is a command from the Court, not from this law firm, and you must follow its instructions even if you dispute the validity or amount of the debt. The advice in this letter also does not affect this law firm's relations with the Court. This law firm may file papers in the suit according to the Court's rules and the judge's instructions.

Finally, if you previously received a discharge in a bankruptcy involving this loan and did not sign a reaffirmation agreement, then this letter is not an attempt to collect a debt from you personally. This law firm is seeking solely to foreclose the creditor's lien on real estate and this law firm will not be seeking a personal money judgment against you.

If you have questions regarding this matter, please do not hesitate to contact this law firm.

Sincerely,

Florida Default Law Group, P.L.

## NOTICE

**Florida Default Law Group, P.L. is a debt collector. This Firm is attempting to collect a debt, and information obtained may be used for the purpose.**

Doc stamps 676.20
Intangible Tax 386.40
Instrument# 2005-038582
**Book: 5492**
**Page: 2702**

Return To:
WELLS FARGO HOME MORTGAGE
3601 MINNESOTA DR, SUITE 200
BLOOMINGTON, MN 55435

This document was prepared by:
WELLS FARGO BANK, N.A.

2600 LAKE LUCIEN DR, STE 312,
MAITLAND, FL 327520000
PAM REID

────────────────[Space Above This Line For Recording Data]────────────────

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated FEBRUARY 11, 2005,
together with all Riders to this document.
(B) "Borrower" is HAL KIDDER JR, A MARRIED PERSON

Subject property herein DOES NOT constitute the HOMESTEAD property of the
borrower.  The borrower's HOMESTEAD address is 4 Via Corbina, Rancho Santa
Margarita, CA  92688...

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is WELLS FARGO BANK, N.A.

Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES
0050578749

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3010  1/01

-6(FL) (2005)
Page 1 of 16        Initials:
VMP MORTGAGE FORMS - (800)521-7291



Lender's address is P.O. BOX 10304, DES MOINES, IA 503060304

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated FEBRUARY 11, 2005
The Note states that Borrower owes Lender ONE HUNDRED NINETY THREE THOUSAND TWO
HUNDRED AND 00/100
(U.S. $****193,200.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Dollars
Payments and to pay the debt in full not later than MARCH 01, 2035

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| Adjustable Rate Rider | Condominium Rider | Second Home Rider |
| Balloon Rider | Planned Unit Development Rider | 1-4 Family Rider |
| VA Rider | Biweekly Payment Rider | Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6(FL) (0005)                Page 2 of 16          Initials:              Form 3010   1/01

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the COUNTY                    [Type of Recording Jurisdiction]
of VOLUSIA                                                           [Name of Recording Jurisdiction]:
SEE ATTACHED EXHIBIT "A"

THIS IS A PURCHASE MONEY SECURITY INSTRUMENT.
TAX STATEMENTS SHOULD BE SENT TO:   WELLS FARGO HOME MORTGAGE, P.O. BOX
10304, DES MOINES, IA  503060304

Parcel ID Number:                                    which currently has the address of
1632 ESPANOLA AVENUE                                                    [Street]
HOLLY HILL                              [City], Florida  32117          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

-6(FL) (0009)                    Page 3 of 16              Initials:          Form 3010  1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

-6(FL) (0005)                    Page 4 of 16            Initials: _____         Form 3010  1/01

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

-6(FL) (0005) Page 6 of 16 Initials: Form 3010 1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

Form 3010   1/01

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

-6(FL) (0005)                              Page 6 of 16        Initials:                Form 3010   1/01

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

-6(FL) (0005)                     Page 6 of 16                 Initials: [signature]          Form 3010   1/01

BOOK: 5492
Page: 2708

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

-6(FL) (0006)                                    Page 6 of 16          Initials: [signature]          Form 3010  1/01

Book: 5492
Page: 2710

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6(FL) (0008)                    Page 8 of 16                Initials: _____        Form 3010  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

-6(IL) (0005)                    Page 10 of 16          Initials:          Form 3010  1/01

Book: 5492
Page: 2712

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any Forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

-6(FL) (0008)                    Page 12 of 18        Initials:          Form 3010   1/01

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

-6(FL) (0005)                    Page 12 of 16                    Initials:                    Form 3010   1/01

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____                    _____ (Seal)
                                            HAL KUDER JR              -Borrower

                                            1632 ESPANOLA AVENUE
_____                     HOLLY HILL      FL   32117   (Address)

                                            _____ (Seal)
                                                                      -Borrower

                                            1632 ESPANOLA AVENUE
                                            HOLLY HILL      FL   32117   (Address)

_____ (Seal)           _____ (Seal)
                        -Borrower                                      -Borrower

                                            1632 ESPANOLA AVENUE
                 (Address)                  HOLLY HILL      FL   32117   (Address)

_____ (Seal)           _____ (Seal)
                        -Borrower                                      -Borrower

                                            1632 ESPANOLA AVENUE
                 (Address)                  HOLLY HILL      FL   32117   (Address)

_____ (Seal)           _____ (Seal)
                        -Borrower                                      -Borrower

                 (Address)                                   (Address)

-6(FL) (0005)                    Page 15 of 16                    Form 3010   1/01

STATE OF ~~FLORIDA~~ CALIFORNIA      County ss: \ ORANGE

The foregoing instrument was acknowledged before me this 8TH DAY OF FEBRUARY by

HAL KUDER JR ., a married man

who is personally known to me or who has produced A CALIFORNIA DRIVERS LICENSE as identification.

Notary Public: _____

2-8-07

MICHAEL J. CONTE
COMM #1496915
Notary Public-California
ORANGE COUNTY
My Comm. Exp. Mar 23, 2007

-6(FL) (0005)     Page 16 of 16     Initials _____     Form 3010   1/01



Book: 5492

Exhibit "A"

All of Lot 32 and Lot 33 and Lot 31, EXCEPT the Northerly 24 feet, Block 11, Section "B", RIO VISTA, according to the map or plat thereof as recorded in Plat Book 6, Page 150, of the Public Records of Volusia County, Florida.

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 11TH day of FEBRUARY, 2005 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to WELLS FARGO BANK, N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 1632 ESPANOLA AVENUE, HOLLY HILL, FL 32117

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

0050578743

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
NMFL# 3170 (14FR) Rev 11/24/2004
⬤-57R (0401).01
Page 1 of 3 Initials: _____
VMP Mortgage Solutions
(800)521-7291

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

NMFL# 3170 (14FR) Rev 11/24/2004

-57R (0401).01                         Page 2 of 3                         Initials: _____

Book: 5492
Page:
Diane M. Matousek
Volusia County, Clerk of Court

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
HAL KUDER JR           -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

NMFL# 3170 (14FR) Rev 11/24/2004
-57R (0401).01                    Page 3 of 3

# NOTE

FEBRUARY 11, 2005                    ORMOND BEACH                    FLORIDA
[Date]                                [City]                         [State]

1632 ESPANOLA AVENUE, HOLLY HILL, FL 32117

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ *****193,200.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of       6.500       %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST       day of each month beginning on APRIL 01, 2005       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MARCH 01, 2035       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WELLS FARGO HOME MORTGAGE, P.O. BOX 10304, DES MOINES, IA 503060304
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ ********1,221.16

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

FLORIDA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N(FL) (0005)       Form 3210 1/01
VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3                    Initials:

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)         _____ (Seal)
HAL KUDER                    -Borrower                                    -Borrower

_____ (Seal)         _____ (Seal)
                             -Borrower                                    -Borrower

_____ (Seal)         _____ (Seal)
                             -Borrower                                    -Borrower

_____ (Seal)         _____ (Seal)
                             -Borrower                                    -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.
BY _____                      [Sign Original Only]
Joan M. Mills, Vice President

-6N(FL) (0005)                    Page 3 of 3                          Form 3210 1/01

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# *Exhibit D:*
# *Declaration by Verification*
# *Required by California Quiet Title*
# *Statute*

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
*CHARLES E. LINCOLN V. WELLS FARGO BANK*
*ET AL.CENTRAL DISTRICT OF CA*

*- 25 -*

*CHARLES EDWARD LINCOLN, III*
*6102 VALLEYVIEW DRIVE*
*LAGO VISTA, TEXAS 78645*
*512-968-2500*
*CHARLES.E.LINCOLN@ATT.NET*